1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT FOR THE

7                   EASTERN DISTRICT OF CALIFORNIA

8

9  JOHN R. SNIDER, CHARLES A.     )        No. CV-F-03-6605 OWW
   WENTLAND, and THE WENTLAND     )
10 FAMILY INVESTMENT GROUP,       )        MEMORANDUM DECISION
                                  )        REVERSING ORDER OF
11                                )        BANKRUPTCY COURT RE REMAND
                                  )        OF ACTION
12                                )
                   Plaintiff,     )
13                                )
            vs.                   )
14                                )
                                  )
15 LARRY NEAL SHERMAN, RITA       )
   ROBINSON SHERMAN, DENNIS M.    )
16 HAUSER, HAUSER & MOUZES,       )
                                  )
17                                )
                   Defendant.     )
18                                )
   _____ )

19

20      Dennis M. Hauser and Hauser & Mouzes, PLC (hereinafter

21 referred to collectively as Hauser) appeal the Order Remanding

   Case, Striking Motion to Dismiss and Granting Parties' Request

22 for Judicial Notice filed by the Bankruptcy Court on September

23 17, 2002.

24      **A.  <u>Background</u>.**

25      On January 18, 1991, Larry and Rita Sherman, then

26

                                  1

represented by Oscar Kleinfeld, filed a Chapter 7 bankruptcy petition in the United States District Court for the Eastern District of California, Case No. 91-90181.  Schedules filed with the Chapter 7 petition identified John R. Snider, Charles Wentland, and Wentland Family Investment Group (hereinafter referred to collectively as Snider/Wentland) as creditors of the Shermans.  However, the schedules did not list a claim by the Shermans against Snider/Wentland.  Michael McGranahan was appointed as trustee for the bankruptcy estate.  On April 23, 1991, Dennis Hauser was substituted as the Shermans' attorney. On May 1, 1991, a Discharge of Debtor was filed by the Bankruptcy Court.[1]

On May 21, 1991, Dennis Hauser, as counsel for the Shermans, filed as an Adversary Proceeding a Complaint in the Bankruptcy Court against Snider/Wentland and the Bank of Lodi (Adv.Proc. No. 91-9061).  The Adversary Proceeding Complaint alleged that Michael McGranahan had been appointed as trustee of the bankruptcy estate and that the Bankruptcy Court had jurisdiction because the "adversary proceeding involves property of the estate of the Debtors as well as certain other potential assets of the

---

[1]The filing of a bankruptcy petition brings a bankruptcy estate into being and triggers an automatic stay, which prevents creditors from enforcing their claims, thus preserving the debtor's assets for ultimate distribution by the bankruptcy trustee. *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1204 (9th Cir.), *cert. denied*, 126 S.Ct. 397 (2005).  A Chapter 7 bankruptcy discharge releases the debtor from personal liability for pre-bankruptcy debts.  *In re Ybarra*, 424 F.3d 1018, 1022 (9th Cir.2005), *cert. denied*, 126 S.Ct. 2328 (2006).

Debtors to include claims for indemnification as against
outstanding loan obligations ...."  However, McGranahan was not
named as a party plaintiff in the Adversary Proceeding.  The
Adversary Proceeding Complaint alleged claims for specific
performance, quiet title, and damages arising from allegations
that Snider/Wentland and the Bank of Lodi failed to honor a
contractual obligation under which Snider/Wentland had primary
liability for a $100,000 loan secured by a deed of trust on the
Sherman's residence; that the Bank of Lodi failed to act in a
commercially reasonable manner in settling an insurance claim
concerning other property leased by the Shermans to conduct their
business and failed to rehabilitate property sold pursuant to a
stipulated foreclosure; and that the Shermans were entitled to
indemnification and damages from Snider/Wentland to the extent
that assets of the Shermans are used to satisfy outstanding
obligations to the Bank of Lodi.

In January/February 1992, Hauser as counsel for the
Shermans, Mattanian Eytan as counsel for Snider/Wentland, James
Ganzer as counsel for the Bank of Lodi, and Malcolm Gross as
counsel for McGranahan, executed a Stipulation Re: Dismissal of
Adversary Proceeding (hereinafter referred to as the 1992
Stipulation), whereby these parties stipulated:

> The court may enter its order of dismissal as
> to the pending adversary proceeding with each
> party to bear their respective costs and
> attorneys fees.  The court may further enter
> its Order authorizing Dennis M. Hauser to pay
> from interest accruing on the sale of
> proceeds of Plaintiffs' residence income tax

1          payable on said interest accruals.

2    The 1992 Stipulation states that it is entered upon the following

3    facts:

> 2.   At the time the Bankruptcy Petition was
> filed, Larry Neal Sherman and Rita Robinson
> Sherman owned real property commonly known as
> 14170 N. Alpine Road, Lodi, California ('the
> Property').  At the time of the filing of the
> Petition, the Property was subject to certain
> liens and encumbrances to include an
> encumbrance arising out of the execution and
> recording of a Deed of Trust in which the
> Bank of Lodi ('the Bank') was the named
> beneficiary.
>
> 3.   That on May 21, 1991, Larry Neal Sherman
> and Rita Robinson Sherman filed their
> Complaint ('the Complaint') initiating the
> within adversary proceeding.
>
> 4.   Since the filing of the Complaint, the
> Property has been sold and, pursuant to order
> entered in the bankruptcy case, sale proceeds
> in excess of those necessary to satisfy other
> encumbrances of record but potentially
> subject to the encumbrance held by the Bank
> have been held in a separate bank account
> under the name of Dennis M. Hauser as Trustee
> for Mr. and Mrs. Sherman.  These funds are
> currently on deposit at the Bank in a
> certificate of deposit and shall hereinafter
> be referred to as 'the sales proceeds'.
> Pursuant to order of the Bankruptcy Court, no
> disbursements can be made from the sale
> proceeds absent further order of the court.
>
> 5.   That each of the parties to the pending
> action and the Trustee either desire or have
> no objection to dismissal of the within
> action so that it can be refiled and
> prosecuted in the Superior Court for the
> County of San Joaquin, State of California.
>
> 6.   That the within stipulation of dismissal
> of the action shall not in any event be
> construed to be a waiver of any claim or
> defense asserted in the pending action.
> While each party hereto agrees that as part

of the order of dismissal each party shall
bear, for the time being, his, her or its own
costs and attorneys fees, all claims with
respect thereto shall be preserved and, as
permitted under the laws of the State of
California, the prevailing party in the
action to be filed in the San Joaquin
Superior Court shall receive such costs and
attorneys fees as that court, by statute or
in the exercise of its discretion, allows.

7.   Each of the parties hereto further
stipulates that to the extent the existing
factual allegations of the existing Complaint
supports any claim for damages against any
one or more of the Defendants, to the extent
such claim is not barred by the applicable
statute of limitations upon the refiling of
the Complaint as contemplated below or was
not barred by any applicable statute of
limitations on the date the Complaint was
filed initiating the within adversary
proceeding and so long as on or before thirty
days from the date of the last party
executing this stipulation Plaintiffs file a
new complaint in the Superior Court for the
County of San Joaquin including the substance
of the allegations of the existing Complaint,
any applicable statute of limitations will be
tolled (i.e., suspended) for purposes of
computing whether any applicable statute of
limitations may act as a bar to any claim
asserted individually or collectively by the
Plaintiffs on their own behalf or in
conjunction with the Trustee.

8.   It is further understood that the
Trustee, through his counsel, has at the
Status Conference which occurred on November
6, 1991, expressed a belief that the Trustee
should join as a party Plaintiff to the
contemplated San Joaquin Superior Court
action and any benefits and burdens imposed
upon the Plaintiffs/Debtors as a result of
this Stipulation shall similarly extend to
the Trustee.

9.   It is further understood and agreed that
as to the sale proceeds, Dennis M. Hauser
shall continue to be in custody of those
proceeds and no further disbursements shall

5

occur therefrom except as permitted by order
of the court.  However, it is hereby
stipulated that Mr. Hauser shall proceed to
obtain a separate tax payer identification
number for the sale proceeds characterizing
the relationship as being a trust
relationship and, with respect to interest
income which has accrued or may hereafter
accrue as a result of the sale proceeds being
invested in an interest bearing account, Mr.
Hauser shall pay such sums as may be required
as income tax on the interest accruals.

11.  By executing this Stipulation, each of
the parties hereto through their respective
attorneys hereby approves the proposed Order
of Dismissal, a copy of which is attached
hereto as Exhibit 'A'.

For reasons undisclosed by the record, neither the 1992

Stipulation nor the Order of Dismissal of the Adversary

Proceeding were filed in the Bankruptcy Court until January 20,

1995, which is also the date on which the Bankruptcy Court signed

the Order of Dismissal of the Adversary Proceeding.

On March 11, 1992, Hauser, as counsel for the Shermans and

for McGranahan, as bankruptcy trustee, filed a Complaint in the

San Joaquin Superior Court against Snider/Wentland and the Bank

of Lodi (hereinafter the Superior Court Action).  The Complaint

alleged in pertinent part:

2.  That on January 18, 1991, the Plaintiffs
Sherman filed their joint voluntary petition
in bankruptcy seeking protection under
Chapter 7 of the Bankruptcy Code.  Said
petition was filed in the United States
Bankruptcy Court for the Eastern District of
California, Case No. 91-90181 ....

3.  That since the filing of the petition
initiating the bankruptcy case, the
Plaintiff, Michael D. McGranahan, has been
and remains the duly appointed and qualified

6

Trustee in Bankruptcy of the estate of the Plaintiffs Sherman created upon the filing of their bankruptcy petition.

4.   That certain of the claims asserted herein are or may be more properly assets of the bankruptcy estate as to which Plaintiff Michael D. McGranahan as Trustee has the responsibility for prosecution and, to the extent any recovery occurs, arranging for the distribution of amounts recovered to creditors of the Plaintiffs Sherman in the bankruptcy case.   Pursuant to stipulation with Plaintiffs Sherman, Plaintiff Michael D. McGranahan has joined as a party Plaintiff to this action for purposes of protecting, preserving and prosecuting such claims.

...

11.   That for several years preceding the filing of this Complaint, the Defendant Wentland on his own behalf and acting frequently as a partner with the Defendant Snider has been involved in many commercial real estate development projects located in the County of San Joaquin and particularly in the City of Lodi ... For several years preceding the filing of this Complaint, Plaintiff Larry Sherman knew the Defendant Charles Wentland as a result of Mr. Sherman acting as an electrician on certain of the projects with which Mr. Wentland was associated.   Over the years, a relationship developed so that the Plaintiffs Sherman reposed great trust and confidence in the Defendant Charles Wentland and said Defendant knew of and encouraged said relationship.

12.   That the Plaintiffs Sherman desired to open a store generally engaged in the business of the sale of lighting fixtures.   A business plan was developed by them under which they projected that $100,000 would be necessary to support inventory acquisitions and general expenses of operation until the business would generate sufficient cash flow to thereafter support its ordinary and normal expenses of operation.   Plaintiffs Sherman did not themselves have the necessary $100,000.

7

13.  In approximately March, 1989, Plaintiff Larry Sherman approached Defendant Charles Wentland.  At the time, the Plaintiff knew as a result of prior communications with Mr. Wentland that Mr. Wentland from time to time assisted in the location of investment money for start up business operations of the type contemplated by the Plaintiffs Sherman.  Mr. Sherman requested of Mr. Wentland his assistance in locating $100,000 to start up the light fixture store.  Mr. Wentland responded with words to the following effect: 'Look no further and I will personally invest the $100,000 necessary so that you can open up your store. [sic]

14.  That thereafter at the request of the Defendant Wentland, a meeting occurred between the Plaintiff Rita Sherman and Mr. Wentland to discuss in greater detail the business plan which had been developed by the Plaintiffs Sherman.  Thereafter, meetings and conversations occurred over the next six to eight week period leading up to the formation of the partnership known as Lodi Lighthouse, a limited partnership (hereinafter 'the Lighthouse') as to which Plaintiffs Sherman were to act as its General Partners and the Defendants Wentland Family Investment Group and Snider were to act as its limited partners.  During said meetings, Defendant Charles Wentland indicated that he could not personally come up with the $100,000 of investment capital required under the business plan prepared by the Plaintiffs Sherman.  He suggested that the Defendant Snider should be included as an investor and the Plaintiffs Sherman agreed.  By April, 1989, the Defendant Snider was also participating in certain of the meetings referred to above.

15.  That during the course of the meetings referred to above, Defendants Wentland and Snider were dissatisfied with the proposed location at which the Lighthouse would conduct business.  They insisted upon and obtained a concession from the Plaintiffs Sherman to lease space located at the Beckman Industrial Park.  Plaintiffs Sherman were reluctant to lease such space as they

perceived it to be potentially more expensive
than space which they had located.
Additionally, the Defendants Snider and
Wentland wanted Plaintiffs to lease more
space than was necessary for the operation of
the proposed business.  The Plaintiffs
Sherman acquiesced in the demands of the
Defendants Wentland and Snider upon the
following representations:

    (a) That in addition to the
$100,000 required by Plaintiffs Sherman to
successfully start up the business operation,
Defendants would additionally advance the
aggregate of $50,000 to the Lighthouse by way
of a partnership contribution to fund the
projected costs of tenant improvements of the
proposed space.

    (b) The Defendants Wentland
and Snider would co-sign upon the lease and
thereby assume a prime and direct
responsibility for payment of the obligations
evidenced thereby.

16.  That in justifiable reliance upon the
foregoing representations, on May 3, 1989,
Plaintiffs Sherman together with Defendants
Wentland Family Investment Group and Snider
entered into that certain lease with Beckman
Industrial Park, Limited (hereinafter 'the
Lease') ....

17.  On or about May 28, 1989, Plaintiffs
Sherman entered into a contractual
relationship with the Defendants Wentland and
Snider ... Upon execution of such contract,
the formation of the Lighthouse partnership
was completed and the parties to the
partnership agreement ... proceeded to
operate said partnership.

The Superior Court Complaint alleges a claim for declaratory

relief, alleging that Wentland/Snider agreed as part of their

capital contribution either to obtain a loan or guarantee

repayment of a loan in the amount of $100,000; that

Wentland/Snider obtained a loan from the Bank of Lodi to the

9

1  Lighthouse partnership; that Plaintiffs Sherman, acting as

2  general partners, together with Snider/Wentland as co-signors,

3  executed a promissory note to the Bank of Lodi to repay the loan;

4  that Wentland/Snider executed continuing guarantees of the loan;

5  that, shortly before the execution of the promissory note, the

6  Plaintiffs Sherman were advised for the first time that the Bank

7  of Lodi was requiring that the Plaintiffs Sherman execute a Deed

8  of Trust on the property occupied by the Shermans as their

9  residence; that the Shermans were induced to execute the deed of

10 trust on their residence upon representations of Snider/Wentland

11 that Snider/Wentland would continue to remain primarily liable

12 for repayment of the loan; that, after negotiations between the

13 Shermans, Snider/Wentland, and the Bank to renew the loan after

14 it matured on July 4, 1990, the Bank declared a default and

15 commenced proceedings for repayment, including to foreclose the

16 deed of trust; that the Shermans demanded that Snider/Wentland

17 honor their contractual obligations and repay the outstanding

18 indebtedness to the Bank; that a dispute has arisen between the

19 Shermans and Snider/Wentland concerning the scope of the

20 contractual obligations.  Paragraph 29 of the Superior Court

21 Complaint alleges:

22           29.  That on January 18, 1991, the Plaintiffs
              Sherman filed their bankruptcy petition to
23            forestall a scheduled foreclosure of the
              Property.  Since the filing of said petition
24            initiating the bankruptcy case, pursuant to
              stipulation between all parties to this
25            action the Property was sold pursuant to
              order entered in the bankruptcy court and the
26            sale proceeds are currently on deposit in a

1    trust account maintained in the name of
     Plaintiffs' counsel ('the Account') with said
2    funds on deposit at the Defendant Bank.

3    30.   Plaintiffs ... allege that all
     Defendants contend that the funds on deposit
4    in the Account should be applied to reduce
     the outstanding loan obligation ... The
5    Plaintiffs dispute said contention and
     contend that the monies on deposit in the
6    Account are either a lien free asset of the
     bankruptcy estate or the personal asset of
7    the Plaintiffs Sherman.

8    The Superior Court Complaint alleges a claim for specific

9    performance by Snider/Wentland of the contractual promises made

10   to the Shermans, alleging in pertinent part:

11   35.   Plaintiffs have no adequate remedy at
     law for the injuries which have been suffered
12   and which may hereafter be suffered.
     Plaintiffs Sherman have been forced to file a
13   bankruptcy petition initiating the bankruptcy
     case in an attempt to preserve their assets
14   to arrange for an orderly distribution to all
     of their creditors to include general
15   unsecured creditors of the Lighthouse
     partnership.  Plaintiffs have been frustrated
16   in their efforts to do so and [sic] the
     continuing wrongful conduct of the
17   Defendants.

18   The Superior Court Complaint also alleged a claim for declaratory

19   relief, alleging that "when Plaintiffs Sherman filed their

20   petition initiating the bankruptcy case, they as general partners

21   of the Lighthouse partnership were in possession of inventory and

22   accounts receivable assets of the partnership;" that "the

23   petition was filed not only on their behalf individually but

24   included in the caption the Lighthouse partnership;" that,

25   shortly before filing the bankruptcy petition, frozen water pipes

26   burst in the premises of the Lighthouse causing damage to the

11

premises and the inventory; that, upon the filing of the
bankruptcy petition and pursuant to stipulation, the Bank was
granted relief from the automatic stay, took possession of the
inventory and proceeded to sell the inventory, applying the
proceeds to the outstanding indebtedness; that Wentland/Snider
should have completely repaid the loan obligation and that "if
such had occurred, any amounts received upon the sale of the
inventory assets would have remained an asset of the bankruptcy
case available for distribution to remaining creditors of the
Lighthouse partnership" and that "the Bank should be required to
turn over to the possession of the Plaintiff Trustee in
Bankruptcy amounts received upon the auction sale of the
inventory assets".  The Superior Court Complaint also alleges
claims for breach of contract, breach of the implied covenant of
good faith and fair dealing, fraud and deceit, and conspiracy to
defraud against Snider/Wentland and the Bank arising out of the
loan transactions.

On June 18, 1993, a Stipulation Regarding Dismissal of
Plaintiff Michael D. McGranahan as Party Plaintiff (hereinafter
referred to as the 1993 Stipulation), executed by Hauser on
behalf of the Shermans, by Malcolm Gross as counsel for
McGranahan, and the attorneys for Snider/Wentland and the Bank,
was filed in the Superior Court Action, which Stipulation states
in pertinent part:

> Whereas Larry N. Sherman and Rita R. Sherman
> ... are Plaintiffs in the herein action, and
> are also Debtors in a bankruptcy proceeding

12

filed under 11 U.S.C. § 301, filed in the
United States Bankruptcy Court for the
Eastern District, Case No. 91-90181; and

Whereas Michael D. McGranahan, the Trustee of
estate of the Shermans is also a Plaintiff in
the above entitled action; and

Whereas Michael D. McGranahan, the Trustee of
the bankruptcy estate of the Shermans,
disclaims any further interest in the above-
entitled state court action and intends to
close out the bankruptcy proceeding;

IT IS STIPULATED by and through the Shermans,
[Snider/Wentland, the Bank of Lodi], and
Michael D. McGranahan, that Michael D.
McGranahan, on behalf of the bankruptcy
estate of the Shermans is withdrawing as a
party Plaintiff in the aforesaid state court
action disclaiming any further interest
herein.

IT IS FURTHER STIPULATED THAT further
pleadings filed in the aforementioned state
court action should reflect this stipulation
and withdrawal by deleting Michael D.
McGranahan as a party Plaintiff.

It is undisputed that Mr. McGranahan did not file a motion
in the Bankruptcy Court to abandon the Trustee's interest in the
Superior Court Action and did not obtain an Order from the
Bankruptcy Court approving his disclaimer of interest in or
withdrawal as plaintiff from the Superior Court Action.

In September 1993, the Shermans filed a First Amended
Complaint in the Superior Court.[2]

On May 20, 1994, Mr. McGranahan as trustee of the Shermans
Chapter 7 bankruptcy estate, filed a final report and account in

---

[2]Pages 2-4 of the First Amended Complaint are not included in
the Excerpt of Record filed with this appeal.

13

1 the Bankruptcy Court.

2       On June 27, 1994, the Shermans filed a Second Amended

3 Complaint in the Superior Court Action against Snider/Wentland

4 and the Bank of Lodi.  The Second Amended Complaint alleges in

5 paragraph 4 that the Shermans filed a bankruptcy petition on

6 January 18, 1991, in Case No. 91-90181 but all references to the

7 trustee are omitted.  The Second Amended Complaint contains

8 allegations similar to those set forth in the Complaint and

9 alleges causes for breach of written contract, breach of the

10 covenant of good faith and fair dealing, specific performance,

11 declaratory relief, fraud and deceit, negligence, conspiracy, and

12 estoppel/quiet title.

13       On March 21, 1995, the Bankruptcy Court entered the final

14 decree in the Shermans' bankruptcy case and the bankruptcy case

15 was closed.

16       In February, 1997, Judge Van Oss of the San Joaquin Superior

17 Court filed an Order Granting Nonsuit in the Superior Court

18 Action.[3]  After noting that prior motion practice had disposed of

19 all causes of action in the Second Amended Complaint except the

20 Seventh Cause of Action for fraud and deceit, the Eighth Cause of

21 Action for negligent misrepresentation, and the Ninth Cause of

22 Action for conspiracy, the Superior Court addressed

23 Snider/Wentland and the Bank's motion that the remaining causes

24 _____

25       [3]The right side of the copy of this Order in the Excerpt of
Record is cut off.  This Order was attached to the Notice of
Removal filed in the Bankruptcy Court.  The same defect occurs on
26 the copy in the Notice of Removal.

1  of action should be dismissed:

2         [B]ased upon events that had occurred in
       connection with plaintiffs' 1991 bankruptcy
3      filing.  Defendants contended that in
       connection with such filing plaintiffs had
4      failed to disclose the claims currently
       before this Court and such failure to
5      disclose justified the imposition of judicial
       estoppel, as well as the application of
6      issue-preclusion principles associated with
       the finality of the bankruptcy proceedings.
7      Defendan [] did not raise any of these
       arguments until after their January 29, 1997
8      motion to dismiss.

9         Defendants also contended for the first time,
       that an order dated February 27, 199[] the
10     bankruptcy court modifying the automatic stay
       in favor of the Bank had permitted the [] to
11     take legal charge and custody of all tangible
       and intangible property belonging to Lodi []
12     Lighthouse, a California Limited Partnership
       (the 'Partnership'), of which plaintiffs were
13     general partners and the Wentland Family
       Investment Group and Snider were the limited
14     partners.  As more fully set forth in the
       record, plaintiffs contended the authorities
15     relied [] by defendants did not bar their
       claims.
16
       Having considered arguments in open court on
17     January 29 and 30, 1997, as well as pertinent
       documents from plaintiffs' 1991 bankruptcy
18     file, the Court decided to treat defendants'
       motion to dismiss as a motion for nonsuit and
19     to grant defendants the relief requested.  In
       connection therewith, the Court makes the
20     following findings

21        (1) At the time of trial, all claims in the
       Second Amended Complaint except the following
22     had been disposed of either by demurrer,
       summary adjudication, judgment on the
23     pleadings or by determinations made pursuant
       to in limine motions.  The following prom[]
24     and representations form the basis for
       plaintiffs' remaining claims under the
25     seventh throug[] ninth causes of action:

26        (A) Before the Partnership

15

Agreement was executed, Wentland
and Snid[] agreed any financing for
the Partnership would be a term of
at least seven years.

(B) After the Partnership Agreement
was executed, Wentland and Snide[]
promised or represented (i) they
would take primary responsibility
for the $100,000 loan extended by
the Bank to the Partnership, (ii)
they had sufficient assets to
support the Ban[] loan, (iii)
plaintiffs did not need to worry
about the requirement in the Bank's
June 29, 19[] commitment letter
that the Bank loan be secured by
deed of trust on plaintiffs' home,
an[] (iv) they would not let
plaintiffs lose their home.

(C) After the Partnership Agreement
was executed, Wentland and Snide[]
represented to plaintiffs that the
Bank had agreed to make a term loan
as opposed to a sho[] term (i.e.,
one year or less) loan.

(D) At a meeting on July 5, 1989,
the Bank represented to plaintiffs
tha[] Bank would proceed to process
their application on behalf of the
Partnership for a seven-[] $100,000
loan guaranteed by the Small
Business Administration ('SBA'),
and on approva[] SB loan would
supercede the $100,000 line of
credit with a one-year term
extended by [] Bank to the
Partnership ('the Bank Loan').

(E) At the July 5, 1989 Bank
meeting, Wentland and Snider
represented Bank would proceed to
process the SBA loan application
and on approval, the SBA loan []
supercede the Bank Loan.

(F) At the July 5, 1989 Bank
meeting, Wentland represented that
the B[] wanted the deed of trust on

16

plaintiffs' home as additional
collateral for the Bank Loan ev[]
though it was Wentland and Snider,
not the Bank, who insisted on the
trust deed require[] The Bank and
Snider said nothing to contradict
Wentland's representation.

(2) On January 18, 1991 plaintiffs filed a
Chapter 7 petition as individuals and general
partners of the Partnership.  Plaintiffs
listed the Bank, Wentland and Snider as
creditors, but listed such claims as
disputed.  Plaintiffs did not, however, list
either the B[] or Wentland or Snider as
parties against whom plaintiffs had
contingent, unliquidated and [] counterclaims
of any kind.  On the Statement of All
Property of Debtor filed by plaintiffs
plaintiffs were required to list all such
claims.  Plaintiffs inserted the word
'unknown' un[] the column for the market
value of the claims, but did not otherwise
identify either the B[] or Wentland or Snider
as persons or parties against whom any such
claim might exist.  N[] did plaintiffs list
claims or counterclaims against any other
person or entity.

(3) When plaintiffs filed their bankruptcy
petition, they knew Wentland and Sn[] would
not indemnify them against any loss suffered
as a result of the Bank's lien on their home,
and plaintiffs knew the Bank would not issue
a seven-year $100,000 loan guarantee[] the
SBA.

(4) Prior to its discharge order, on February
27, 1991, the bankruptcy court iss[] an order
accepting a stipulation entered into between
plaintiffs and the Bank lifting the automatic
stay associated with plaintiffs' bankruptcy
petition.  The order permitted the Ba[] take
legal and physical possession of all
collateral pledges by the Partnership to the
Bank [] the general partners, plaintiffs had
executed a security agreement in favor of the
Bank pur[] to which all tangible assets of
the Partnership, as well as its accounts
receivable and its g[] intangibles, were
pledged to the Bank as additional collateral

17

for repayment of the loan.  Under the
February 27, 1991 order of the Bankruptcy
Court, the Bank was permitted to []
possession of such collateral and liquidate
the same.  Included in the stipulation which
was incorporated into the order was a
statement of the liquidated amount owing by
the Partner[] to the Bank and a description
of the collateral subject to the Bank's
possession and liquida[]

(5) On May 1, 1991, the plaintiffs received a
discharge from their debts from [] bankruptcy
court.  Thereafter, on or about May 21, 1991,
plaintiffs filed a complaint in th[]
bankruptcy court against the Bank, Wentland
and Snider listing only themselves as
plaintif[] and seeking recovery against the
Bank for its failure to act in a commercially
reasonable manner in connection with its sale
of the Partnership inventory and disposition
of the Partnership's insurance claim on the
inventory, and against Wentland and Snider
for speci[] performance and damages
associated with Wentland and Snider's failure
to repay the Bank Loan or indemnify
plaintiffs.  The trustee in bankruptcy was
not made a party to this complaint.  This
complaint in bankruptcy was subsequently
dismissed by stipulation of the parties
incorporated into an order of the bankruptcy
court.  The stipulation and order
contemplated that plaintiffs would file a new
complaint in the Superior Court for the ...
County of San Joaquin.

(6) In the original complaint filed on March
11, 1992 in this Court, the trustee [] named
as a co-plaintiff.  However, in a First
Amended Complaint filed on September 17 []
the trustee was eliminated as a party.  He
has not reappeared in these proceedings.

On the basis of the foregoing, the Court
makes the following conclusions of law:

(A) Plaintiffs' failure to disclose
in their bankruptcy schedules the
claims which [] now assert
precludes them from maintaining
those claims before this Court.

18

Plaintiffs are barred from
proceeding under principles of
judicial estoppel. ....

(B) When plaintiffs received their
discharge on May 1, 1991, that
discharge [] with it issue
preclusion consequences.

(C) The stipulation and order of
the bankruptcy court dated February
27, 19[] also entitled to res
judicata effect.

The judgment of the San Joaquin Superior Court was affirmed on appeal by the state Court of Appeals.

On November 10, 1999, Snider/Wentland filed a Complaint for malicious prosecution against the Shermans, Hauser and Does 1-50 in the San Joaquin County Superior Court (hereinafter referred to as the Malicious Prosecution Complaint or Malicious Prosecution Action).

The Malicious Prosecution Complaint describes the pleadings and rulings in the Shermans' Superior Court action against Snider/Wentland.  The Malicious Prosecution Complaint alleges in pertinent part:

9.  On March 11, 1992, THE SHERMANS as
parties and HAUSER as attorney instituted a
civil action against Plaintiffs in the
Superior Court of California, County of San
Joaquin, as Case No. 242437.  The complaint
sought damages and other remedies for (1)
declaratory relief; (2) specific performance;
(3) declaratory relief; (4) breach of written
contract; (5) breach of covenant of good
faith and fair dealing; (6) fraud and deceit;
(7) conspiracy; and (8) promissory
estoppel/quiet title.  A true and correct
copy of the complaint is attached hereto ....

10.  HAUSER & MOUZES first appeared in the

19

action on or about June 18, 1993.  A true and correct copy of the first document filed by HAUSER & MOUZES is attached hereto ....

11.   The Complaint was subsequently amended on or about September 8, 1993.  The First Amended Complaint sought damages and other remedies for (1) declaratory relief, (2) specific performance, (3) breach of written contract, (4) breach of covenant of good faith and fair dealing, (5) fraud and deceipt [sic], (6) conspiracy, and (7) estoppel/quiet title.   A true and correct copy of the First Amended Complaint is attached hereto.

11. [sic] The Complaint was subsequently amended again and on or about June 27, 1994, the Second Amended Complaint sought damages and other remedies for (1) breach of written contract, (2) breach of covenant of good faith and fair dealing, (3) declaratory relief, (4) specific performance, (5) breach of written contract, (6) breach of covenant of good faith and fair dealing, (7) fraud and deceipt [sic], (8) negligence, (9) conspiracy and (10) estoppel/quiet title.   A true and correct copy of the Second Amended Complaint is attached hereto ....

12.   On February 13, 1997, the Honorable Terrence R. Van Oss, Judge of the Superior Court, granted a non-suit in favor of [Snider/Wentland] against THE SHERMANS.  A true and correct copy of the Order granting non-suit is attached hereto ....

13.   On or about April 10, 1997, a Notice of Appeal of said judgment for non-suit was filed on behalf of THE SHERMANS by HAUSER, DONNA L. REYNOLDS, and HAUSER & MOUZES as counsel for THE SHERMANS ... On or about January 25, 1999, the Court of Appeal of the State of California in and for the Third Appellate District issued a Remittitur to the trial court clerk, the opinion of the Court of Appeal in favor of [Snider/Wentland] and against THE SHERMANS ....

14.   Defendants THE SHERMANS acted without probable cause in bringing and/or maintaining the above-mentioned action, in that they did

20

not honestly and reasonably believe that there were grounds for the action because as follows:

    a.  On or about January 18, 1991, THE SHERMANS filed a Petition under Chapter 7 of the Bankruptcy Code as Case No. 91-90181 in the United States Bankruptcy Court, Eastern District of California ....

    b.  In connection with the bankruptcy filing, THE SHERMANS filed schedules, including Schedule A, Statement of All Liabilities of Debtor; Schedule B, Statement of All Property of Debtor; and Summary of Debts and Property.  Said schedules were signed under penalty of perjury by THE SHERMANS ....

    c.  The applicable law requires that debtors, in seeking relief under the Bankruptcy Code, complete true, complete, and accurate schedules specifying their assets and liabilities.

    d.  Although THE SHERMANS listed WENTLAND, SNIDER, and THE WENTLAND FAMILY INVESTMENT GROUP as creditors holding claims against THE SHERMANS, they did not disclose on the schedule of assets any claim (unliquidated, disputed, contingent, or otherwise) against WENTLAND, SNIDER, THE WENTLAND FAMILY INVESTMENT GROUP, or any of them.

    e.  On or about May 1, 1991, THE SHERMANS received a 'Discharge of Debtor' from the United States Bankruptcy Court ... releasing them from all of their dischargeable debts ....

    f.  Defendant HAUSER acted without probable cause in bringing and/or maintaining the above-mentioned action against Plaintiffs as attorney of record because he unreasonably neglected to investigate the facts or the law applicable to the action, and no reasonable attorney would regard as tenable the prosecution of a claim that accrued before the filing of a Chapter 7 bankruptcy, that was not mentioned

21

as an asset in the bankruptcy proceeding and
that was pursued after the bankruptcy
discharge was granted.  Defendant, HAUSER,
was the attorney of record for SHERMANS in
the bankruptcy proceeding before the SHERMANS
received their bankruptcy discharge and was
aware of the failure to disclose the alleged
claim and failed to take any action to
correct such omission.  Having consciously
allowed the SHERMAN bankruptcy to proceed to
discharge, HAUSER then caused the original
Complaint against WENTLAND and SNIDER to be
filed seeking affirmative relief and alleged
the complaints set forth therein.

15.  Defendant HAUSER acted without probable
cause in bringing and/or maintaining the
above-mentioned action against Plaintiffs as
attorney of record because he unreasonably
neglected to investigate the facts or the law
applicable to the action, and no reasonable
attorney would regard as tenable the
prosecution of a claim that accrued before
the filing of a Chapter 7 bankruptcy, that
was not mentioned as an asset in the
bankruptcy proceeding and that was pursued
after the bankruptcy discharge was granted.
Defendant, HAUSER, [sic] was the attorney of
record for SHERMANS in the bankruptcy
proceeding before the SHERMANS received their
bankruptcy discharge and was aware of the
failure to disclose the alleged claim and
failed to take any action to correct such
omission.  Having consciously allowed the
SHERMAN bankruptcy to proceed to discharge,
HAUSER then caused the original Complaint
against WENTLAND and SNIDER to be filed
seeking affirmative relief and alleging the
complaints set forth therein.

16.  Defendants THE SHERMANS acted
maliciously in bringing and/or maintaining
the above-mentioned action against Plaintiffs
by a desire to annoy, harass and wrong the
Plaintiffs.  Among other things, they were
upset concerning a failed business enterprise
and have sought, in numerous ways, to gain
retaliation for that failure against
Plaintiffs, even though Plaintiffs had
nothing to do with the business failure.
Defendant HAUSER acted maliciously in

22

> bringing and/or maintaining the above-
> mentioned action against the Plaintiffs by
> instituting proceedings against the
> Plaintiffs without probable cause, without
> reasonably investigating the facts and/or the
> law, by failing to disclose his knowledge
> regarding the law, by failing to advise the
> SHERMANS to report their alleged claims
> against the Plaintiffs in their bankruptcy
> schedules by failing to amend the schedules
> and by consciously choosing to let the
> bankruptcy proceed [sic] to discharge and
> then, within a matter of weeks, file the
> original Complaint against plaintiffs herein.

On October 12, 2001, the Bankruptcy Court granted Hauser's
motion to re-open the Shermans' bankruptcy case.   On October 12,
2001, Hauser removed the Malicious Prosecution Action from the
San Joaquin Superior Court to the Bankruptcy Court.[4]   The Notice
of Removal alleges in pertinent part:

> 7.   The instant action ... was filed on
> November 10, 1999 ... seeking compensatory
> and punitive damages for malicious
> prosecution ... However, the Complaint was
> not served on HAUSER ... until September 14,
> 2001.   THE SHERMANS, who are again debtors in
> a new Chapter 7 proceeding, Eastern District
> of California, Sacramento Division, No. 01
> 26747 C-7, have apparently not yet been
> served with process.   On or about September
> 19, 2001, a notice of automatic stay as to
> the SHERMANS was filed in the instant action
> ....
>
> 8.   This action may be properly removed to
> the Eastern District of California, Modesto
> Division, under 28 U.S.C. § 1452 and

---

[4]Although the Malicious Prosecution Action was removed to the
Shermans' 1991 bankruptcy action, Case No. 01-09112, the case was
transferred from the Modesto Division to the Sacramento Division on
October 29, 2004.   All pleadings filed in connection with
proceedings in the Bankruptcy Court pertaining to the removed
Malicious Prosecution Action are now docketed in Bankruptcy Case
No. 04-02405.

Bankruptcy Rule 9027 because it involves a suit against a legal representative of the Chapter 7 Trustee regarding post-petition representation of the Trustee, filed without leave of the bankruptcy court, a matter for which the bankruptcy court has original jurisdiction under 11 U.S.C. § 1334 [sic]. The action being removed qualifies as a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it is a matter concerning administration of the Estate, under Section 157(b)(2)(C) because it involves, and arises from, a counterclaim by the Estate against persons filing claims against the Estate, and under Section 157(b)(2)(O) as constituting other proceedings affecting liquidation of assets of the estate or adjustment of the debtor/creditor relationship.

On November 19, 2001, Hauser filed a motion to dismiss the Malicious Prosecution Complaint, which motion was briefed by the parties.  On February 13, 2002, Snider/Wentland filed a motion to remand the Malicious Prosecution Action, which was briefed and argued to the bankruptcy court.

On September 17, 2002, the Bankruptcy Court filed a Joint Memorandum Decision, striking Hauser's motion to dismiss and granting Snider/Wentland's motion to remand.

In remanding the Malicious Prosecution Complaint to the San Joaquin County Superior Court, the Bankruptcy Court ruled that it lacked subject matter jurisdiction over the Malicious Prosecution Complaint.

The Bankruptcy Court concluded that jurisdiction was not provided by 28 U.S.C. § 1334(a) ("district courts shall have original and exclusive jurisdiction of all cases under title 11") because "cases 'under title 11' are the actual bankruptcy case

24

1 and the property thereunder" and that the Malicious Prosecution

2 Action "is an adversary action, not the actual bankruptcy case."

3      The Bankruptcy Court further ruled that the Malicious

4 Prosecution Action does not fall within the Bankruptcy Court's

5 "original but not exclusive jurisdiction of all civil proceedings

6 arising under title 11, or arising in or related to cases under

7 title 11" within the meaning of 28 U.S.C. § 1334(b).  Noting that

8 the term "arising under" means the Bankruptcy Court may hear

9 proceedings involving a claim that is created or determined by a

10 provision of Title 11 and that the term "arising in" means the

11 Bankruptcy Court may hear administrative-type matters that exist

12 only because of the bankruptcy case, the Bankruptcy Court

13 concluded that the Malicious Prosecution Action does not satisfy

14 either of these terms because it "is based on a state law claim,

15 and can exist outside the bankruptcy context, as shown by the

16 fact it was first filed in state court."

17      The Bankruptcy Court rejected Hauser's argument that

18 jurisdiction under Section 1334(b) exists because the Malicious

19 Prosecution Action challenges actions taken in administering an

20 asset of the bankruptcy estate:

21          The Malicious Prosecution Action does not
            challenge any action taken by McGranahan or
22          the Hauser Defendants in any alleged capacity
            as counsel for McGranahan.  The Wentland
23          Entities have represented to the court, with
            the knowledge that they would be subsequently
24          judicially estopped from taking a contrary
            position, that they will not attempt to amend
25          the complaint in the Malicious Prosecution
            Action to proceed against McGranahan or
26          anyone acting on his behalf with the proper

25

1     authority to do so.  The Wentland Entities
      only seek relief against the Shermans and
2     their counsel, the Hauser Defendants.

3 The Bankruptcy Court ruled that, even though the Shermans were

4 dealing with an asset of the bankruptcy estate when they

5 prosecuted the Superior Court Action, "they were not

6 'administering' an asset of the bankruptcy estate [but] were mere

7 interlopers who had no standing to prosecute the claims."   The

8 Bankruptcy Court concluded that McGranahan never formally

9 abandoned the claims alleged in the Superior Court Action because

10 no motion to do so was filed or served on the creditors in the

11 Chapter 7 case, thereby making McGranahan's stipulation of

12 disclaimer of interest filed in the Superior Court Action

13 ineffective to constitute abandonment.  The Bankruptcy Court

14 relied on *Krank v. UTICA Mutual Ins. Co.*, 109 B.R. 668 (E.D.Pa.

15 1990), *aff'd*, 908 F.2d 962 (3rd Cir.1990), which held that

16 "[o]nce a cause of action becomes the property of the estate, the

17 debtor may not bring suit on that action unless the property has

18 been abandoned by the trustee" and that the proper course of

19 action was for the debtor to move the Bankruptcy Court to have

20 the trustee abandon the property (claims) so that the debtor

21 could pursue the lawsuit in state court.  109 B.R. at 669.  The

22 Bankruptcy Court ruled:

23     The facts before the court are similar.  Even
      though the Shermans were dealing with an
24     asset of the bankruptcy estate in the 1991
      Bankruptcy Case when they prosecuted the
25     March 1992 State Court Action, they were not
      'administering' an asset of the bankruptcy
26     estate.  They were mere interlopers who had

1        no standing to prosecute the claims.  Such
2        action does not constitute administering an
         asset of a bankruptcy case.

3     The Bankruptcy Court also rejected Hauser's claim that

4 subject matter jurisdiction under Section 1334(b) exists because

5 the Malicious Prosecution Action is preempted by the Bankruptcy

6 Code.  Hauser, citing *MSR Exploration, Ltd. v. Meridian Oil,*

7 *Inc.*, 74 F.3d 910 (9th Cir.1996), in addition to California state

8 court authority, argued that the Malicious Prosecution Action is

9 preempted because the basis for the malicious prosecution were

10 events taking place within the bankruptcy court proceedings.  The

11 Bankruptcy Court ruled:

12        The actions complained of in the Malicious
         Prosecution Action were not taken in the
13       bankruptcy court or even as part of the
         proper administration of an asset of the
14       bankruptcy estate in the 1991 Bankruptcy
         Case.  Rather, the Malicious Prosecution
15       Action seeks a remedy for the Shermans and
         their counsels' independent actions in state
16       court.  There is no infringement on the
         overall scheme of the Bankruptcy Code.  Thus,
17       the claims alleged in the Malicious
         Prosecution Action are not preempted.
18

19     The Bankruptcy Court rejected Hauser's argument that

20 jurisdiction under Section 1334(b) existed because in filing and

21 prosecuting the Superior Court State Action, they were carrying

22 out the requirements of the Bankruptcy Court's January 1995

23 Order, thus making the Malicious Prosecution Action a collateral

24 attack on the January 1995 Order and, therefore a "core"

25 proceeding:

26        ... This argument does not properly analyze
         the purpose of determining whether an action

27

1             is core or non-core and mis-apprehends the
effect of involvement of a bankruptcy court

2             order in another proceeding.

3             Before ever reaching the issue of 'core'
versus 'non-core' status, subject matter

4             jurisdiction must exist under 28 U.S.C. §
1334.  Regarding matters over which the

5             bankruptcy court has subject matter
jurisdiction, the distinction between 'core'

6             and 'non-core' dictates whether an Article I
bankruptcy judge may enter a final order.  28

7             U.S.C. § 157; *Harris Pine,* 44 F.3d at 1436.

8             The fact that an order of a bankruptcy court
may be interpreted in another proceeding does

9             not, in and of itself, vest the bankruptcy
court with subject matter jurisdiction over

10            that proceeding.

11 The Bankruptcy Court further ruled:

12            First, for reasons undisclosed in the record,
the 1992 Stipulation was not submitted to the

13           bankruptcy court and made an order until
January 1995.  It is axiomatic that the

14           Hauser Defendants could not have been
compelled by the court to file a lawsuit in

15           state court in 1992, when the court did not
enter the order at issue until three years

16           later in 1995.  Second, even if the court had
entered the January 1995 Order before the

17           Hauser Defendants filed the March 1992 State
Court Action, that order cannot reasonably be

18           interpreted as compelling the Hauser
Defendants to file the March 1992 State Court

19           Action.  Their contention to the contrary is
a misinterpretation of the plain language and

20           meaning of the January 1995 Order.  The order
was an example of a common occurrence.  It

21           approved a stipulation for dismissal in one
forum without prejudice to the re-filing in

22           another forum.  It did not compel the re-
filing.

23

24 The Bankruptcy Court noted that "if it had been intended to

25 compel re-filing of the May 1991 Adversary in state court, the

26 January 1995 Order would not contain the language '... nothing

herein contained is intended to be a bar to refiling of such

Complaint.'"

The Bankruptcy Court also ruled that it did not have

"related to" jurisdiction within the meaning of Section 1334(b)

over the Malicious Prosecution Action:

> [T]he Malicious Prosecution Act does not
> involve actions taken by McGranahan (or the
> Hauser Defendants acting as McGranahan's
> counsel), nor does it involve actions taken
> by the Shermans (or the Hauser Defendants
> acting as the Shermans' counsel) in
> administering an asset of the bankruptcy
> estate in the 1991 Bankruptcy Case, nor does
> it involve claims that are preempted by the
> Bankruptcy Code, nor does it involve actions
> the Shermans were compelled to take by order
> of the bankruptcy court in the 1991
> Bankruptcy Case.  It is an action seeking
> damages against the Shermans (and the Hauser
> Defendants acting as the Shermans' counsel)
> for actions that were taken in the state
> court without standing or authority to act on
> behalf of the estate of the 1991 Bankruptcy
> Case.  It may have great effect on the
> Wentland Entities, the Shermans and the
> Hauser Defendants, but the court concludes
> that it has no conceivable effect on the
> bankruptcy estate in the 1991 Bankruptcy
> Case.

Finally, the Bankruptcy Court ruled that, even if subject

matter jurisdiction in the Bankruptcy Court existed over the

Malicious Prosecution Action, it would exercise its discretion

under 28 U.S.C. § 1452(b) to remand the Malicious Prosecution

Action to the San Joaquin Superior Court:

> Even if the Malicious Prosecution Action were
> to have some conceivable effect on the
> bankruptcy estate in the 1991 Bankruptcy
> Case, there is an insufficient connection
> between the conduct of the Shermans (and the
> Hauser Defendants acting as the Shermans'

counsel) alleged in the Malicious Prosecution
Action and the 1991 Bankruptcy Case.  As
stated above, the Malicious Prosecution
Action does not involve actions taken by
McGranahan (or the Hauser Defendants acting
as McGranahan's counsel), nor does it involve
actions taken by the Shermans (or the Hauser
Defendants acting as the Shermans' counsel)
in administering an asset of the bankruptcy
estate in the 1991 Bankruptcy Case, nor does
it involve claims that are preempted by the
Bankruptcy Code, nor does it involve actions
the Shermans were compelled to take by the
order of the bankruptcy court in the 1991
Bankruptcy Case.  It is an action seeking
damages against the Shermans (and the Hauser
Defendants acting as the Shermans' counsel)
for actions that were taken in the state
court without the standing or authority to
act on behalf of the bankruptcy estate of the
1991 Case.  The Malicious Prosecution Action
belongs in state court.

Upon the filing by Hauser of an appeal of this ruling, the

Bankruptcy Court stayed the remand order pending resolution of

the appeal by the district court.

**B.  Appellate Jurisdiction**.

28 U.S.C. § 1452(a) provides in pertinent part that "[a]

party may remove any claim or cause of action in a civil action

... to the district court for the district where such civil

action is pending, if such district court has jurisdiction of

such claim or cause of action under section 1334 of this title."

Section 1452(b), as amended in 1990 by the Judicial Improvements

Act, provides:

The court to which such claim or cause of
action is removed may remand such claim or
cause of action on any equitable ground.  An
order entered under this subsection remanding
a claim or cause of action, or a decision not
to remand, is not reviewable by appeal or

30

> otherwise by the court of appeals under
> section 158(d), 1291, or 1292 of this title
> or by the Supreme Court of the United States
> under section 1254 of this title.

In *In re Borelli*, 132 B.R. 648 (N.D.Cal.1991), the district court rejected the argument that Section 1452(b) makes any decision on a remand motion in a bankruptcy case unreviewable on appeal:

> While the amendment does not specifically
> address appellate review by the district
> court, it is clear from the legislative
> history that Congress intended to give the
> district court jurisdiction to review remand
> and abstention decisions of the bankruptcy
> courts.  The Congressional Record clarifies
> any ambiguity in the language of the
> amendment:
>
> > Section 309 would amend ... 38
> > (sic) U.S.C. 1334(c)(2) and 1452(b)
> > to clarify that, with respect to
> > certain determinations in
> > bankruptcy cases, they forbid only
> > appeals from the district courts to
> > the courts of appeals, not from
> > bankruptcy courts to the district
> > courts .... Such determinations
> > would therefore by (sic) reviewable
> > by the district court.
>
> 138 Cong.Rec. S17580 (daily ed. Oct. 27,
> 1990).
>
> Section 9027(e) of the Federal Rules of
> Bankruptcy procedure was amended August 1,
> 1991 to conform to the changes in section
> 1452(b).  Judicial Conf.Comm. on Rules of
> Practice and Procedure Amendments to the
> Fed.R.Bankr.Proc., H.R.Doc. NO. 102-80, 102d
> Cong. 1st Sess. 169 (1991).  The notes of the
> Advisory Committee explain the change:
>
> > Subdivision (e) [of section 9027],
> > redesignated as subdivision (d), is
> > amended to delete the restriction
> > that limits the role of the

31

> bankruptcy court to the filing of a
> report and recommendation for
> disposition of a motion for remand
> under 28 U.S.C. 1452(b).  This
> amendment is consistent with §
> 309(c) of the Judicial Improvements
> Act of 1990, which amended §
> 1452(b) so that it allows an appeal
> to the district court of a
> bankruptcy court's order
> determining a motion for remand
> ....

132 B.R. at 649-650; *see also McLeod v. Dalkon Shield Claimants Trust,* 886 F.Supp. 16, 18 (D.Or.1995).

Snider/Wentland do not dispute the jurisdiction of the district court to review the Bankruptcy Court's remand order, **"if in fact** Judge Holman was ever empowered to hear the removal action."  Snider/Wentland notes that they objected and continue to object to "this matter" being heard as an Adversary Proceeding.  Snider/Wentland contends that Hauser has not complied "with the requirements of 11 U.S.C. § 7001 [sic] (Bankruptcy Code, adversary proceedings), or the related Federal Rules of Civil Procedure (Title 28, starting at Rule 3) regarding service of a summons to 'defendants.'"

Snider/Wentland's challenge to the Bankruptcy Court's jurisdiction is meritless.  Rule 7001(10), Bankruptcy Rules, defines an adversary proceeding to include "a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452."  The Malicious Prosecution Action filed by Snider/Wentland against Hauser in the San Joaquin County Superior Court was removed by Hauser to the Bankruptcy Court.  Therefore, there was

no requirement that Hauser serve Snider/Wentland with a complaint and summons pursuant to Rules 3 and 4, Federal Rules of Civil Procedure.  Removal is effectuated by serving a Notice of Removal on all non-removing parties who have appeared in the action and are subject to the jurisdiction of the court in which they were first sued.

Snider/Wentland contend that the Bankruptcy Court lacked jurisdiction to review any motions filed by Hauser in the Bankruptcy Court because Hauser was not a party to the Sherman's bankruptcy action.

This challenge to the Bankruptcy Court's jurisdiction also is meritless.  The Malicious Prosecution Action names Hauser as a defendant.  As a defendant to an existing state case he may seek to remove.  The entire issue on this appeal is whether the Malicious Prosecution Action was properly removed to the Bankruptcy Court pursuant to the Bankruptcy Court's subject matter jurisdiction.  That Hauser was not previously named as a creditor of the Shermans in their initial bankruptcy proceedings does not, of itself, deprive the Bankruptcy Court of jurisdiction over the Malicious Prosecution Action.

Snider/Wentland's appellees' brief asserts that they "dispute the authority of Judge Russell to issue a stay of Judge Holman's order of September 19, 2003, order remanding this case to State court", contending that they were denied due process and an opportunity to be heard with regard to Hauser's emergency motion to stay the remand order.

33

1    Snider/Wentland did not file a notice of appeal from Judge

2  Russell's stay order nor did Snider/Wentland file a cross-appeal.

3  This district court has discretion to consider this issue

4  notwithstanding the absence of a notice of appeal by

5  Snider/Wentland. *See In re Hessco Industries, Inc.*, 295 B.R.

6  372, 376-377 (9th Cir.BAP 2003), *citing Mendocino Environmental*

7  *Center v. Mendocino County*, 192 F.3d 1283, 1297-1298 (9th

8  Cir.1999).  In *Mendocino Environmental Center*, the Ninth Circuit

9  ruled that a notice of cross-appeal is a rule of practice that

10  can be waived at the court's discretion, rather than a

11  jurisdictional requirement.  192 F.3d at 1298.  The Ninth Circuit

12  further held:

13          In deciding whether to allow a cross-appeal
            that has not been properly noticed, courts
14          have considered factors such as the
            interrelatedness of the issues on appeal and
15          cross-appeal (particularly whether they
            involve the same parties), whether a notice
16          of cross-appeal was merely late or not filed
            at all, whether the nature of the district
17          court opinion should have put the appellee on
            notice of the need to file a cross-appeal,
18          [and] the extent of any prejudice to the
            appellant caused by the absence of notice
19          ....

20  *Id.* at 1299.  Applying these factors, the issue raised by

21  Snider/Wentland will not be considered.  Although the parties are

22  the same, the issues are not related and Snider-Wentland did not

23  file a notice of cross-appeal.

24      **C.   Statement of Issues**.

25      The issues identified by Hauser in the Statement of Issues

26

34

are as follows:[5]

  1.  Whether federal law preempts and bars Snider/Wentland's Malicious Prosecution Action;

  2.  Whether the Bankruptcy Court erred in concluding that it lacked subject matter jurisdiction even if federal preemption does not result in exclusive jurisdiction in the Bankruptcy Court.

  3.  Whether the Bankruptcy Court erred in concluding that it could be divested of subject matter jurisdiction by post-removal statements of the record by Snider/Wentland's counsel.

  4.  Whether the findings of the Bankruptcy Court in the Joint Memorandum Decision are supported by the record.

  5.  Whether the Bankruptcy Court abused its discretion

---

[5]Snider/Wentland's "Statement of Issues" in its opening brief, includes as an issue "[w]hether Appellants' are attempting to obtain a Federal Rules of Civil Procedure (FRCP) Rule 12(b)(6) dismissal, or a FRCP 56 summary judgment". In the opening brief, Snider/Wentland asserts:

> The Appellants' filed a FRCP 12(b)(6) motion, requesting a dismissal based on their claim that Appellees' failed to state a claim upon which relief can be granted. However, Appellants' [sic] have seemingly (and continuously) argued this case as if a FRCP 56 (Summary Judgment) motion had been filed. It is not.

This assertion makes no sense and raised no issue to be resolved on appeal. As noted, the Bankruptcy Court struck Hauser's Rule 12(b)(6) motion to dismiss because the Bankruptcy Court granted Snider/Wentland's motion to remand the Malicious Prosecution Action. No summary judgment motion was before the Bankruptcy Court and no issue regarding standards governing resolution of a Rule 12(b)(6) motion as opposed to a summary judgment motion is involved in this appeal.

by remanding the Malicious Prosecution Action on equitable
grounds.

**D.   <u>Standard of Appellate Review</u>**.

A district court reviews the bankruptcy court's findings of
fact under a clearly erroneous standard and reviews its
conclusions of law de novo.  *In re Windmill Farms*, 841 F.2d 1467,
1469 (9th Cir. 1988).  "A finding is 'clearly erroneous' when
although there is evidence to support it, the reviewing court on
the entire evidence is left with the definite and firm conviction
that a mistake has been committed."  *United State v. United
States Gypsum Co.*, 333 U.S. 364, 395 (1948).  As long as findings
are plausible in light of the record viewed in its entirety, a
reviewing court may not reverse even if convinced it would have
reached a different result.  *Wardley Int'l Bank, Inc. v. Nasipit
Bay Vessel*, 841 F.2d 259, 262 n.1 (9th Cir. 1988).[6]

When reviewing for an abuse of discretion, "'[a] bankruptcy
court necessarily abuses its discretion if its bases its ruling
on an erroneous view of the law.'"  *In re Cady,* 266 B.R. 172, 178
(9th Cir.BAP 2001), *aff'd*, 315 F.3d 1121 (9th Cir.2003).  An abuse
of discretion also occurs if the reviewing court has "'a definite
and firm conviction that the court below committed a clear error
of judgment in the conclusion it reached ....'"  *DaRonde v.*

---

[6]Snider/Wentland "strongly disagree[s]" with the standard of
review to the extent that review may include the "clearly
erroneous" standard, contending that the entire review must be *de
novo*.  Depending on the nature of the issue under review, the
appropriate standards are those set forth above.

1   *Shirley (In re Shirley),* 134 B.R. 940, 943 (9th Cir.BAP 1992).

2      **E.**  **Preemption**.

3      State law is preempted under the Supremacy Clause in three

4 circumstances.  *English v. General Electric Co.*, 496 U.S. 72, 78

5 (1990).  Of relevance to the resolution of this appeal are "field

6 preemption" and "conflict preemption".  "Field preemption" "may

7 be inferred from a 'scheme of federal regulation ... so pervasive

8 as to make reasonable the inference that Congress left no room

9 for the States to supplement,' or where an Act of Congress

10 'touch[es] a field in which the federal interest is so dominant

11 that the federal system will be assumed to preclude enforcement

12 of state laws on the same subject.'" *Id.* at 79.  "Conflict

13 preemption exists "where 'compliance with both federal and

14 statute regulations is a physical impossibility,' or where state

15 law 'stands as an obstacle to the accomplishment and execution of

16 the full purposes and objectives of Congress.'" *Gade v. Nat'l*

17 *Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

18      Hauser contends the Bankruptcy Court erred in ruling that

19 conflict preemption and field preemption did not apply to the

20 allegations of the Malicious Prosecution Action.

21      Hauser relies primarily on *MSR Exploration v. Meridian Oil*,

22 74 F.3d 910, 913 (9th Cir.1996).

23      In *MSR Exploration*, the Ninth Circuit addressed "whether

24 state malicious prosecution actions for events taking place

25 within the bankruptcy court proceedings are completely preempted

26 by federal law."  74 F.3d at 912.  MSR had a contract with

Producers to take and process natural gas, which contract required MSR to pay for the gas on a monthly basis and for MSR and Producers to share equally in any drop in gas prices.  After paying monthly for the gas for several years, MSR informed Producers that it was reducing the price it paid for gas.  After being advised by a unit manager for Producers that the reduction was improper and requesting a check to cover the amount of the reductions, MSR continued to pay the reduced price for several years without further objection and without reimbursing the difference to Producers.  Some years later MSR and Producers agreed to a new pricing schedule.  Thereafter, MSR filed a Chapter 11 bankruptcy petition.  Producers filed creditors' claims against MSR based on the unit manager's objection to the reduced payments.  MSR filed objections to the creditors' claims and the Bankruptcy Court disallowed Producers' claims.  MSR did not pursue sanctions, attorneys fees or any other remedy in the Bankruptcy Court.

After MSR's plan of reorganization was confirmed and substantially consummated, MSR brought a malicious prosecution action against Producers in the District Court.  The District Court dismissed the action for lack of subject matter jurisdiction, agreeing with Producers that the malicious prosecution claim was preempted and could only be pursued in the Bankruptcy Court.  In affirming, the Ninth Circuit ruled that "field preemption" applied to MSR's malicious prosecution action because Congress had expressed its intent that bankruptcy matters

38

be handled in a federal forum by placing bankruptcy jurisdiction exclusively in the district courts as an initial matter, citing 28 U.S.C. § 1334(a).  Although "[t]he mere fact that exclusive jurisdiction over a particular action is in the district courts would not necessarily mean that a later malicious prosecution action must be brought there ... it does  militate in that direction ... [because] the exclusivity of federal jurisdiction over bankruptcy matters is an indication of Congress's intent." *Id.* at 913.  Secondly, the Ninth Circuit inferred Congressional intent to preempt from the "complex, detailed, and comprehensive provisions of" Title 11.  *Id.* at 914.  The Ninth Circuit commented:

> ... While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.  It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process.

> Debtors' petitions, creditors' claims, disputes over reorganization plans, disputes over discharge, and innumerable other proceedings, would all lend themselves to claims of malicious prosecution.  Those possibilities might gravely effect the already complicated processes of the bankruptcy court ....

> In short, the highly complex laws needed to constitute the bankruptcy courts and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state malicious prosecution actions.  To put it another way, the problem here is not only

one of state courts deciding issues of
federal law in one manner or another.  That
is not an entirely unique situation, even
when uniformity is required ... The
difficulty here goes much deeper.  It is a
question of state courts, in effect,
interfering with the whole complex,
reticulated bankruptcy process itself.  That
is not to say that the need for uniformity
should be denigrated.  There can be no doubt
that Congress *did* place considerable weight
on the need for a uniform bankruptcy process,
which leads to our third reason for finding
preemption.

Bankruptcy law does require uniformity, and
that need persuaded the framers of the United
States Constitution to expressly grant
Congress the power 'to establish ... uniform
Laws on the subject of Bankruptcies
throughout the United States.'  Art. I, § 8,
cl. 4. ....

It is true that in many circumstances state
courts can, and do, resolve questions of
federal law 'with no difficulty.' ...
Nevertheless, the unique, historical, and
even constitutional need for uniformity in
the administration of the bankruptcy laws is
another indication that Congress wished to
leave the regulation of parties before the
bankruptcy court in the hands of the federal
courts alone.  Of course, Congress did
provide a number of remedies designed to
preclude the misuse of the bankruptcy process
... That, too, suggests that Congress has
considered the need to deter misuse of the
process and has not merely overlooked the
creation of additional deterrents ....

*Id.* at 914-915.  The Ninth Circuit concluded:

... We hold that MSR's malicious prosecution
action against the Producers is completely
preempted by the structure and purpose of the
Bankruptcy Code.  Therefore, MSR's purported
action must, in fact, be a federal claim.
That claim, however, should have been brought
in the bankruptcy court itself, and not as a
separate action in the district court.

1  *Id.* at 916.

2      Hauser takes issue with the Bankruptcy Court's conclusion
3  that the preemption discussed in *MSR Exploration* is not
4  applicable to the Malicious Prosecution Action because the
5  "actions complained of in the Malicious Prosecution Action were
6  not taken in the bankruptcy court or even as part of the proper
7  administration of an asset of the bankruptcy estate in the 1991
8  bankruptcy."  Hauser notes that the Malicious Prosecution
9  Complaint is premised on what occurred in the Bankruptcy Court
10 and the application of bankruptcy law to the fact that the
11 Shermans failed to list their claim against Snider/Wentland on
12 the schedules required by law to be filed in a bankruptcy
13 proceeding; that the Shermans received a discharge from the
14 Bankruptcy Court on May 1, 1991; and that Hauser, as counsel for
15 the Shermans, negligently allowed the Shermans to proceed to
16 discharge without scheduling the claims against Snider/Wentland
17 and then negligently filed the Adversary Proceeding against
18 Snider/Wentland in the Bankruptcy Court.  Hauser argues that,
19 although the Malicious Prosecution Complaint avoids using this
20 terminology, what the Malicious Prosecution Complaint alleges is
21 bad faith initiation of an adversary proceeding initially filed
22 in the Shermans' bankruptcy in Bankruptcy Court.  This, Hauser
23 contends, is precisely the type of conduct *MSA* found preempted.
24
25     That the Adversary Proceeding filed in the Bankruptcy Court
26 was dismissed subject to refiling in the Superior Court does not,

41

Hauser urges, negate preemption of the Malicious Prosecution

Action.  First, Hauser argues, *MSR Exploration* encompasses state

court proceedings authorized by the Bankruptcy Court, citing *Saks*

*v. Parilla, Hubbard & Militzok*, 67 Cal.App.4th 565 (1998).

In *Saks*, the Debtor in a bankruptcy proceeding filed an

Adversary Proceeding in the Bankruptcy Court against Saks based

on a fraudulent conveyance and preferential transfer.  Saks

prevailed in the Adversary Proceeding and then filed a malicious

prosecution action against the Debtor and Debtor's counsel in

state court.  The trial court dismissed the malicious prosecution

action for lack of subject matter jurisdiction and the Court of

Appeals affirmed, holding:

> The gist of Saks' complaint is that the
> defendants misused the bankruptcy process by
> filing the adversary proceeding.  He had
> remedies available in the bankruptcy court.
> Like the plaintiff in *MSR Exploration, Ltd.*,
> he chose not to invoke them.  That was a
> mistake.  Parties may not avail themselves of
> state court tort remedies to circumvent
> federal remedies for the opponents' alleged
> misuse of the bankruptcy process.

67 Cal.App.4th at 573-574.

Here, Snider/Wentland also had a remedy in the Bankruptcy

Court concerning the invalidity of the underlying claims alleged

in the Adversary Proceeding.  Instead of stipulating with the

Shermans and McGranahan to dismissal of the Adversary Proceeding

and its refiling in the Superior Court, Snider/Wentland could

have moved the Bankruptcy Court for dismissal of the Adversary

Proceeding on the ground that the claims alleged therein had not

1  been included in the required schedules and/or were without

2  merit.  Snider/Wentland eventually obtained dismissal of the

3  Superior Court Action based on the application of Bankruptcy law

4  to the Shermans' failure to list an asset of the bankruptcy

5  estate.

6      Citing *Satten v. Webb,* 99 Cal.App.4th 365 (2002),

7  Snider/Wentland argues that the Bankruptcy Court's conclusion

8  that the Malicious Prosecution Action is not preempted was not

9  error.  In *Satten v. Webb*, Satten sold the Keenans property and

10 the Keenans defaulted on the purchase money promissory note.

11 Satten sued the Keenans and obtained a money judgment, which the

12 Keenans appealed.  While the appeal was pending, the Keenans

13 filed a Chapter 11 bankruptcy petition.  Satten filed a claim in

14 the bankruptcy proceeding based on the money judgment.  A

15 bankruptcy trustee was appointed and joined in the Keenans'

16 appeal of the money judgment.  Satten entered into a settlement

17 with the bankruptcy trustee of her claim, which settlement was

18 approved by the Bankruptcy Court, and the order approving the

19 settlement was affirmed after the Keenans appealed it.  The

20 bankruptcy reorganization plan was approved and, then, the

21 Keenans' appeal of the money judgment was dismissed.

22     The Keenans then filed a fraud complaint in the Superior

23 Court against Satten and the bankruptcy trustee, alleging that

24 the bankruptcy settlement was entered into with the intent to

25 defraud the Keenans, that the bankruptcy trustee had breached

26 fiduciary duties to the Keenans by liquidating the estate to

1  obtain commissions and by causing the Keenans' appeal of the

2  money judgment to be dismissed.  Satten and the bankruptcy

3  trustee filed a notice of removal of the Superior Court action to

4  the Bankruptcy Court pursuant to 11 U.S.C. § 1452, contending

5  that the Bankruptcy Court had retained jurisdiction under the

6  Keenans' bankruptcy reorganization plan to adjudicate subsequent

7  disputes among holders of claims or causes of action involving

8  the Debtor, that the Bankruptcy Court had jurisdiction over the

9  claims in the Superior Court action because the Keenans asserted

10 claims "arising in or related to" the Chapter 11 case, and that

11 the Keenans' claims related to the administration of the estate

12 or the liquidation of the assets of the estate.  The Bankruptcy

13 Court granted summary judgment for Satten and the bankruptcy

14 trustee, ruling that it had subject matter jurisdiction under 28

15 U.S.C. § 1334 and the matter was a core proceeding under 28

16 U.S.C. § 157(b)(2)(A) and further ruling that there was no

17 evidence to support the Keenans' allegations of fraud and breach

18 of fiduciary duty.

19     The district court affirmed the Bankruptcy Court's summary

20 judgment.  Satten then filed a malicious prosecution action in

21 Superior Court against the Keenans and their attorney, Webb.

22 Webb demurred to the malicious prosecution complaint on the

23 ground that the Superior Court lacked jurisdiction because the

24 claims were preempted by federal law.  The Superior Court

25 sustained Webb's demurrer without leave to amend, ruling that the

26 malicious prosecution complaint was a core proceeding within the

1  meaning of 28 U.S.C. § 157(b)(2)(A) and finding that the

2  malicious prosecution complaint was within the exclusive

3  jurisdiction of the Bankruptcy Court because it concerned the

4  administration of the bankruptcy estate by alleging that the

5  bankruptcy trustee and Satten acted fraudulently and breached

6  fiduciary duties in the administration of the estate.  99

7  Cal.App.4th at 369-373.

8       The Court of Appeal reversed.  After a lengthy description

9  of numerous federal and state cases discussing preemption, the

10 Court of Appeal held in pertinent part:

> We must analyze these allegations [in
> Satten's malicious prosecution complaint] in
> light of the policies [concerning preemption]
> outlined above.  First, as summarized in *MSR
> Exploration*, ..., we inquire if the exercise
> of state court jurisdiction 'would be
> inconsistent with and subvert the exclusive
> jurisdiction of the federal courts by
> allowing state courts to create their own
> standards as to when persons may properly
> seek relief in cases Congress has
> specifically precluded those courts from
> adjudicating.' *Gonzales [v. Parks,* 830 F.2d
> 1033, 1035 (9th Cir.1987].  Second, state
> court jurisdiction would not be proper to
> accomplish 'the adjustment of rights and
> duties within the bankruptcy process itself,'
> which should be uniquely and exclusively
> federal (e.g. debtors' petitions, creditors'
> claims, disputes over reorganization plans,
> disputes over discharge, and such other
> proceedings).  (*MSR Exploration, supra*, 74
> F.3d at p. 914).  Third, the preemption
> determination must recognize the need for
> uniformity in bankruptcy law.  (*Id.* at pp.
> 914-915).
>
> These factors will assist us in determining
> the nature of the federal jurisdiction over
> Satten's malicious prosecution claims.  This
> in turn will depend on whether the

45

jurisdiction over the underlying matter that was litigated in federal bankruptcy court was exclusively federal, or was instead concurrent or supplemental.  (28 U.S.C. §§ 157(b)(2)(A), (O), 1334, 1367.)  We first take note of the trial court's reliance on *In re Delorean Motor Co., supra,* 155 B.R. 521, which stands for the rule that a state law malicious prosecution action arising out of a trustee's attorney's performance of official duties in a bankruptcy matter was a 'core proceeding,' such that it could not be litigated in state court.  The issue actually presented in *DeLorean* was whether the bankruptcy court erred in determining that it should remand a state court action previously removed to its court, based on the doctrines of mandatory and discretionary abstention.  (28 U.S.C. § 1334(c)(1), (2).)  The appellate court ruled that no such remand to state court was required and the matter could be decided in bankruptcy court.  This is an entirely different scenario, because Satten is not claiming tortious conduct by a trustee's attorney, but instead a malicious filing outside of bankruptcy court by and against a third party.

In light of all the considerations outlined above, we must reject each of Webb's arguments in support of the demurrer ruling below.  First, although the underlying fraud proceeding was ultimately resolved in bankruptcy court, it did not amount to an 'authorized bankruptcy proceeding.' because it was not grounded in a federal statutory provision, but rather represented a common law fraud action (removed for different reasons involving the trustee's participation).  Our reference in *Pauletto [v. Reliance Insurance Co.*], 64 Cal.App.4th 597, to the underlying case as an 'authorized bankruptcy proceeding,' was made in the factual context that the underlying case there was brought under 11 United States Code section 523.  Although we said there that 'the distinctions between the various bankruptcy proceedings which could give rise to a malicious prosecution action are not important,' we made that statement in reference to adversary proceedings, etc.,

46

authorized by federal statutes, that are
clearly core proceedings. (28 U.S.C. §
157(b)(2)(A), (O).) Here, the underlying
case sounded in state common law fraud and
tort. Thus, *Pauletto* is distinguishable,
because a case is not authority for a
proposition not considered therein ....

Next, the jurisdiction question is considered
de novo in this ruling on demurrer. (*MSR
Exploration, supra*, 74 F.3d at p. 912.) The
fact that Satten joined in the removal
request does not mean she must be deemed
bound by it for all purposes, such as to give
the bankruptcy court exclusive jurisdiction
where it would not otherwise exist. Our
independent subject matter jurisdiction
inquiry is not affected by the removal
request, because removal was otherwise proper
due to the presence of the codefendant, the
bankruptcy trustee, whose alleged activities
were made in an official capacity so as to
require exclusive jurisdiction in the
bankruptcy court as a core proceeding. (See
*In re DeLorean Motor Co., supra*, 155 B.R. at
p. 525 [proper inquiry is whether a defendant
is the functional equivalent of a trustee in
bankruptcy due to the defendant's alleged
actions].) However, as to Satten, no such
official status was alleged regarding her
claimed participation in the defrauding of
Keenan. Instead, it appears she was brought
along to bankruptcy court under 28 United
States Code section 1367 supplemental
jurisdiction, when the trustee made the
initial removal request and when she joined
it. (28 U.S.C. § 1452.) However, her role
in the bankruptcy case was one step removed
from that of the trustee, which makes her
less centrally involved in the bankruptcy
estate matters.

Similarly, the finding by the bankruptcy
court that this was a core proceeding under
28 United States Code section 157(b)(2)(A),
concerning the administration of the
bankruptcy estate, is not dispositive when
the allegations as to Satten are individually
considered as outlined above. The same is
true of the trial court's finding in ruling
on the demurrer here, that the underlying

case was a core proceeding, when we review
the jurisdiction question de novo.

In summary, we believe the nature of the
underlying fraud case, filed outside of
bankruptcy, does not require or justify a
finding that it was an authorized bankruptcy
proceeding.  It was not based on federal law,
as were the underlying '[d]ebtors' petitions,
creditors' claims, disputes over
reorganization plans, disputes over
discharge, and innumerable other
proceedings,' referred to in *MSR Exploration,
supra*, 74 F.3d at page 914, as requiring
later preemption of a subsequent malicious
prosecution action.  Here, state court
jurisdiction over the malicious prosecution
case that is founded upon the unsuccessful
fraud allegations will not improperly
accomplish 'the adjustment of rights and
duties within the bankruptcy process itself,'
which is uniquely and exclusively federal.
Nor will it interfere uniformity of
application of bankruptcy law.  (*Ibid.*)

In this regard, it is somewhat disingenuous
of Webb to contend that there can be no state
court jurisdiction of this malicious
prosecution action, since his clients'
underlying fraud action was commenced in
state court.  Under these circumstances, the
state courts should be able to examine
whether that state court filing on behalf of
his client met the standards required for
subsequent malicious prosecution relief ...
Satten must have his day in court to decide
her rights or remedies regarding malicious
prosecution.

Further, even though Satten's attorney at the
summary judgment hearing in bankruptcy court
showed she was aware of the available
bankruptcy remedies under Federal Rules of
Bankruptcy Procedure, rule 9011 (11 U.S.C.),
that does not demonstrate that those were the
only remedies available for all time.  Even
if Satten could show Webb's frivolous filing
of pleadings, etc. under the standards of
rule 9011, that would be different than
showing the elements of the tort of malicious
prosecution, such as not only a favorable

48

termination (not disputed), but also lack of probable cause to sue or the initiation of the proceeding with malice ....

Moreover, no waiver of any state law claims that were otherwise available occurred through Satten's failure to pursue bankruptcy sanctions, since the matter was only in bankruptcy court as to Satten under the supplemental jurisdiction or 'related to' rationales.  (28 U.S.C. §§ 1334(b), 1367.) The prosecution of this action will not create any impermissible state court interference with the existence of federal sanctions for the filing of frivolous and malicious bankruptcy pleadings, such as was disallowed by *Idell*, *supra*, 224 Cal.App.3d at page 271: 'The mere possibility of being sued in tort in state court, with the potential for substantial damage awards, could deter persons from exercising their rights in bankruptcy.  Thus, it is for Congress and the federal courts, not state courts, to decide what incentives and penalties should be utilized in the bankruptcy process.' ... We do not believe the underlying Keenan common law fraud case amounted to a protected exercise of his rights in bankruptcy, such that no later state court malicious prosecution filings may be premised upon it.

Further, as stated in *Hinuja* [*v. Arco Products Co.*, 102 F.3d 987, 990 (9th Cir.1996)], 'This is not a case where a separate state action will interfere with the uniformity required in bankruptcy proceedings or with the control of the bankruptcy court over those proceedings.  It is a simple matter of enforcing [state] law and deciding claims arising out of actions which allegedly [violated state law].'  A malicious prosecution case based on an underlying common law fraud action, even if the underlying action was removed to bankruptcy court and then resolved there on state law grounds, does not raise the concerns that require a federal preemption finding.

99 Cal.App.4th at 384-387.

Snider/Wentland argues that the facts involved in this

49

appeal are very similar to those involved in *Sattan,* except that

the Malicious Prosecution Action was not removed by the

bankruptcy trustee and there is no participation by the

bankruptcy trustee in the Malicious Prosecution Action.

However, as Hauser argues, the holding in *Sattan* is inapplicable

to the facts here.   Unlike *Sattan*, here, the Adversary Proceeding

was commenced in the Bankruptcy Court and alleged that the

Bankruptcy Court had jurisdiction because the "adversary

proceeding involves property of the estate of the Debtors as well

as certain other potential assets of the Debtors to include

claims for indemnification as against outstanding loan

obligations ...."   Adversary Proceedings involving the

administration of a bankruptcy estate, allowance or disallowance

of claims, and matters affecting adjustment of debtor-creditor

relations are core proceedings pursuant to 28 U.S.C. § 157(b)(2).

The Shermans' underlying original claims filed as an

adversary proceeding in the Bankruptcy Court about

Snider/Wentland's liability for alleged fraud and other

misconduct in causing the Shermans' residence to be pledged as

collateral and ultimately foreclosed concerned the $100,000 loan

repayment and related to and arose out of the business of the

debtors, Shermans, and the partnership (the Lighthouse).   The

potential asset represented  by the debtors' claims against

Snider/Wentland was first asserted in Bankruptcy Court in the

Adversary Proceeding.   When the Adversary Proceeding was

dismissed by the Bankruptcy Court pursuant to the 1992

1   Stipulation signed by all parties, including McGranahan, and the

2   action refiled in the San Joaquin County Superior Court, the

3   Complaint alleged that the claims against Snider/Wentland were

4   property of the bankruptcy estate.  When the San Joaquin Superior

5   Court granted non-suit for Snider/Wentland, it did so based on

6   bankruptcy law, because of the Shermans' failure to schedule the

7   claims against Snider/Wentland in the Chapter 7 bankruptcy case.

8       Also distinguishable from *Sattan* is the fact that the

9   Malicious Prosecution Action is against Hauser for actions taken

10  in the Bankruptcy Court and the bankruptcy.  Mr. Hauser was

11  counsel for both the Shermans and the trustee in the Superior

12  Court Action until McGranahan, as bankruptcy trustee, attempted

13  to withdraw pursuant to the 1993 Stipulation, but did so without

14  an order from the Bankruptcy Court authorizing the abandonment of

15  the claims.  Unlike *Sattan*, the core issues in the Malicious

16  Prosecution Action cannot be resolved by California law because

17  of the allegation in paragraphs 14 and 15 of the Malicious

18  Prosecution Complaint that "applicable law requires that debtors,

19  in seeking relief under the Bankruptcy Code, complete true,

20  complete and accurate schedules specifying their assets and

21  liabilities" and that Hauser acted without probable cause because

22  "no reasonable attorney would regard as tenable the prosecution

23  of a claim that accrued before the filing of a Chapter 7

24  bankruptcy, that was not mentioned as an asset in the bankruptcy

25  proceeding and that was pursued after the bankruptcy discharge

26  was granted."  These allegations establish that a state court

51

1   hearing the Malicious Prosecution Action would be and was

2   "hopelessly entangled in bankruptcy law."

3       In addition, bankruptcy law applied to determine the

4   probable cause element of the malicious prosecution claim,

5   including whether McGranahan properly withdrew from the Superior

6   Court Action under bankruptcy law and whether he lawfully

7   abandoned the Sherman claims, which were assets of the bankruptcy

8   estate.  The ramifications and the legal effect of all

9   McGranahan's actions or inactions in the state court case and

10  Hauser's performance in relation to the trustee's withdrawal,

11  are questions of bankruptcy law.  Further, as discussed *infra*, a

12  cause of action becomes "property of the bankruptcy estate as of

13  the Petition Date, even though the Action was not listed in the

14  schedules, and property that is neither abandoned nor

15  administered remains property of the estate even after the case

16  is closed."  *In re Lopez*, 283 B.R. 22, 28 (9th Cir.BAP 2002).

17      Technically, the Shermans' claims against Snider/Wentland

18  continued to be property of the bankruptcy estate after the

19  trustee's purported withdrawal and ineffective abandonment of the

20  claims.  Although concededly the state court could determine that

21  a "favorable termination" for purposes of a malicious prosecution

22  claim cannot be based on a void judgment, determination of the

23  validity or invalidity of the judgment of "non-suit" in the

24  Superior Court Action depends on and requires resolution of

25  issues of bankruptcy law.

26      Snider/Wentland's contention that *Sattan* negates preemption

52

of the Malicious Prosecution Action requires that the Court deem
irrelevant that Hauser first filed the Adversary Proceeding in
the Bankruptcy Court; advanced the Shermans' claims on behalf of
the bankruptcy estate; dismissed and refiled the Adversary
Proceeding claims in the San Joaquin Superior Court pursuant to
the 1992 Stipulation approved by the Bankruptcy Court;
represented McGranahan as trustee in the Superior Court Action;
and lost the Superior Court Action based on application of
bankruptcy law under the judicial estoppel doctrine.
Snider/Wentland's analysis also ignores that resolution of the
malicious prosecution claim will require determination whether
Hauser initiated the Adversary Proceeding in Bankruptcy Court
without probable cause under bankruptcy law; the effect of
McGranahan's joinder as a party plaintiff to the Superior Court
Action; his purported withdrawal from the Superior Court Action;
potential abandonment of the bankruptcy estate claims against
Snider/Wentland; the effect of McGranahan's purported approval of
the continued pursuit of the Superior Court Action; and the
effect of the Automatic Stay of 11 U.S.C. § 362 on the validity
of the Superior Court's non-suit judgment. *Sattan* is not
persuasive authority supporting the Bankruptcy Court's ruling
that the Malicious Prosecution Action is not preempted.

Hauser argues that preemption cannot be avoided "by
indulging the fiction that the [Malicious Prosecution Action] was
born when the trustee withdrew from the Superior Court Case.
Hauser notes that the only actions alleged in the Malicious

Prosecution Complaint reflecting lack of probable cause and malice are the filing of the Adversary Proceeding in Bankruptcy Court and inactions of Hauser and the trustee in the Bankruptcy Court that resulted in the Shermans' failure to file a claim against Snider/Wentland in their bankruptcy proceeding, of which Hauser was aware.

In *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir.2005), the Ninth Circuit "join[ed] our sister circuits in holding that a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity."  In *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir.1993), the Sixth Circuit held:

> [C]ounsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where ... they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets ... In authorizing the Trustee to bring the suit against DeLorean and Weitzman, the court authorized the Trustee's attorneys to aid the Trustee in bringing the suit.  The protection that the leave requirement affords the Trustee and the estate would be meaningless if it could be avoided by simply suing the Trustee's attorneys.  Therefore, leave of the Bankruptcy Court must be granted before a suit may be brought against counsel for the trustee, in their capacity as counsel for trustee, since such suit is essentially a suit against the trustee.

Hauser refers to Snider/Wentland's stipulation in the Bankruptcy Court during hearings on the motion to remand which is

the subject of this appeal that gave "an unconditional, irrevocable waiver of including the trustee or the trustee's counsel in the malicious-prosecution action."  Snider/Wentland made this stipulation to shore up its position that the Malicious Prosecution Complaint is not based on the filing of the Adversary Proceeding, the initiation of the Superior Court Case, or any actions by Hauser in the Superior Court Case up to the time McGranahan attempted to withdraw from the Superior Court Case. Hauser correctly maintains that the allegations of the Malicious Prosecution Complaint are to the contrary and further contends:

> [L]eave to amend was neither requested nor given, and amendment would have eviscerated the factual basis for Snider/Wentland's allegations concerning malice and probable cause ... The [Bankruptcy C]ourt's contrary conclusion reflects an apparent misunderstanding of governing law.

In so arguing, Hauser cites California authority that a cause of action for malicious prosecution must allege, *inter alia*, that the underlying litigation was *initiated* without probable cause and with malice.  However, since this appeal was briefed, the California Supreme Court ruled that "[c]onfining the tort of malicious prosecution to the *initiation* of a suit without probable cause would be ... without support in authority or in principle", *Zamos v. Stroud*, 32 Cal.4th 958, 966 (2004), and that "an attorney may be held liable for malicious prosecution for continuing to prosecute a lawsuit discovered to lack probable cause."  *Id.* at 970.  The Malicious Prosecution Complaint alleges that Hauser initiated and/or *maintained* the Superior Court Case

without probable cause because the Shermans had not listed their claims against Snider/Wentland on the required bankruptcy schedules filed in the Bankruptcy Court.  Snider/Wentland's stipulation in the Bankruptcy Court that it will not include McGranahan as trustee or McGranahan's counsel as parties to the Malicious Prosecution Action does not alter the allegations of the Malicious Prosecution Complaint.  However, the propriety of McGranahan's withdrawal from the Superior Court Case and apparent abandonment of a bankruptcy estate asset without court approval raises additional issues of bankruptcy law.

Hauser alternatively argues that preemption still applies even if the basis of the Malicious Prosecution Complaint is the continued maintenance of the Superior Court Action after McGranahan withdrew.

Title 11 U.S.C. § 541(a)(1) provides in pertinent part that a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  Once appointed, a bankruptcy trustee becomes the representative of the estate, 11 U.S.C. § 323(a), and succeeds to the debtor's right to pursue causes of action which are the property of the estate.  *See In re Alcala*, 918 F.2d 99, 102 (9th Cir.1990).

Hauser argues that the trustee's discretion with regard to pursuit of pending actions by the debtor may be exercised in one of three ways: (1) intervene and assume prosecution as trustee; (2) consent to prosecution by the debtor for the benefit of the

1    estate; or (3) decline prosecution.  *See Detrick v. Panalpina,*

2    *Inc.*, 108 F.3d 529, 535 (4th Cir.), *cert. denied*, 522 U.S. 810

3    (1997).

4        Hauser argues that the Bankruptcy Court ignored the second

5    option.  In *In re Anchorage Nautical Tours, Inc.*, 145 B.R. 637,

6    642 (9th Cir.BAP 1992), the BAP explains:

7            Under [11 U.S.C.] § 554(a), notice and a
             hearing is required to abandon property of
8            the estate.  Abandonment is not effective
             without notice to the creditors.  *Sierra*
9            *Switchboard Co. v. Westinghouse Elec. Corp.*,
             789 F.2d 705,709 (9th Cir.1986).  Section
10           554(d) explicitly provides that when property
             is not effectively abandoned in accordance to
11           § 554(a), it remains property of the estate.

12   In *Cusano v. Klein*, 264 F.3d 936 (9th Cir.2001), Cusano, a former

13   member of a rock group brought suit against the rock group, its

14   members, owners of rights to the group's songs, and publishers of

15   books and videotapes concerning the rock group, seeking to

16   recover royalties owed for songs he had written, and asserting

17   claims for defamation and infringement of his right to publicity.

18   In pertinent part, the District Court granted summary judgment

19   against Cusano and dismissed all claims for royalties which

20   should have been paid prior to March 21, 1989, the date on which

21   Cusano filed a Chapter 11 bankruptcy petition, finding that

22   Cusano had failed to schedule his royalty claims, that the

23   unscheduled claims belonged to the bankruptcy estate, and that

24   Cusano could not proceed with those claims without first

25   obtaining permission from the bankruptcy court.  *Id.* at 942-944.

26       The Ninth Circuit affirmed the District Court with regard to

57

claims for unpaid pre-petition royalties, which were required to be scheduled separately as either receivables or legal claims. *Id.* at 945.  Noting that 11 U.S.C. § 521(1) imposes an affirmative duty on the debtor to schedule his assets and liabilities and that causes of action are separate assets which must be formally listed, *id.* at 945-947, the Ninth Circuit, rejected Cusano's argument that his royalty claims for pre-petition compositions had not yet accrued, *id.* at 947, and ruled that Cusano's failure to list the cause of action on his schedule "vests the claim in the bankruptcy estate, where it remains." *Id.* at 948.  *See also In re Lopez*, *supra*, 283 B.R. at 28:

> [T]he Action became property of the bankruptcy estate as of the Petition Date, even though the Action was not listed in the schedules, and property that is neither abandoned nor administered remains property of the estate even after the case is closed.

Relying on these cases, Hauser contends that the 1993 Stipulation filed in the Superior Court Action on June 18, 1993, wherein McGranahan stipulated "on behalf of the bankruptcy estate of the Shermans is withdrawing as a party Plaintiff in the aforesaid state court action disclaiming any further interest herein" did not constitute a lawful abandonment by McGranahan under bankruptcy law because he did not give notice to creditors and opportunity for a hearing as required by Section 554(a). Therefore, Hauser argues, the Superior Court Action remained the property of the Shermans' bankruptcy estate as a matter of law.

Hauser acknowledges that the Bankruptcy Court reached this

conclusion, but argues that the Bankruptcy Court erred in further concluding that "[e]ven though the Shermans were dealing with an asset of the bankruptcy estate in the 1991 Bankruptcy Case when they prosecuted the March 1992 State Court Action, they were not 'administering' an asset of the bankruptcy estate [but] were mere interlopers who had no standing to prosecute the claims."

Hauser argues that there is no factual foundation for the Bankruptcy Court's conclusion and contends that the existence of the bankruptcy, coupled with McGranahan's retention of Hauser and the execution of the 1993 Stipulation "evinced exercise of the trustee's discretion to allow the Shermans to proceed **on behalf of the estate**." Hauser refers to *Detrick v. Panalpina, Inc.*, *supra*, 108 F.3d at 536:

> While no doubt exists that the bankruptcy Trustees did not file a motion to substitute as plaintiffs before the district court, by virtue of the Dericks' bankruptcy, the Trustees succeeded to the Dericks' RICO and conspiracy claims, and the Trustees' retention of the Dericks' counsel sufficiently evinced the Trustees' exercise of their discretion to allow the Dericks to pursue the present cause of action on behalf of the estate.

*See also In re Lopez, supra*, 283 B.R. at 28: "[A] chapter 7 trustee can ... prosecute [an action], settle it, abandon it, or arrange for [the debtor] to prosecute it in exchange for the estate receiving a share of the proceeds." Hauser further contends that Snider/Wentland effectively conceded a grant of authority from McGranahan to the Shermans to prosecute the Superior Court Action for the benefit of the bankruptcy estate.

59

Hauser refers to the statement of Snider/Wentland's counsel, Mr. Castillo, to the Bankruptcy Court at the hearing on the motion to dismiss and the motion to remand:

> The stipulation was and is that the matter could be refiled in the state court. It was refiled in state court, and it proceeded from there. And sometime after that, the trustee, I would characterize it as, abandoned the claim, said, 'Mr. Hauser, you and the Shermans, go ahead. I' - I have no further interest in this. If you prevail, great. If you lose, then the estate would not be subject to any type of claim.'

(ER, Tab 28, p. 000636). Finally, Hauser contends, irrespective of any agreement between McGranahan and the Shermans, the 1992 Stipulation "and the order it approved" obligated him, as an officer of the bankruptcy court, to take necessary actions with respect to property of the bankruptcy estate.

Snider/Wentland argues that Hauser's assertion that he acted on behalf of the trustee is unsupported by the facts, asserting that Hauser admitted to the San Joaquin Superior Court that he knew that the Shermans' claims against Snider/Wentland should have been listed on the bankruptcy schedules and knowingly did not amend the schedules and that Hauser represented to the San Joaquin Superior Court that any monetary recovery in the Superior Court Action "would not be an asset of the bankruptcy estate." Hauser's inaccurate statement does not change the law that the claims were then property of the bankruptcy estate.

Snider/Wentland refers to statements made by Snider/Wentland's counsel, Mr. Castillo, at the hearing on April

1, 2002 before the Bankruptcy Court on Snider/Wentland's motion

to remand.  Mr. Castillo, referring to a Request for Judicial

Notice filed in the Bankruptcy Court, but not part of the record

on appeal, states in pertinent part:

> The money was from the sale of the property.
> The proper party that would have received
> those funds would have been the Bank of Lodi.
> So the court is asking on 391, the state
> court:
>
>> 'So even if the funds are somehow
>> returned to the debtor, then the
>> bankruptcy trustee no longer has
>> any claim over them?'
>
> Mr. Hauser's reply is: 'And that's an
> important point, too, Your Honor, because
> many of these cases talk about assets which
> are going to be distributed to creditors.'
>
> Very, very clearly the stakeholder funds were
> for the pure benefit of the Shermans.  It had
> nothing to do with the bankruptcy estate; it
> had nothing to do with the trustee, by Mr.
> Hauser's own words. [ER 30, p.756]

Snider/Wentland also requests that this Court "review the

(original) Plaintiff's Request for Judicial Notice (P/RJN) filed

for the February 25, 2002, oral argument before Judge HOLMAN

(this pleading was conveniently left out of the Excerpts of

Record filed by the Appellants)."

    However, Snider/Wentland did not include this Request for

Judicial Notice in the Excerpts of Record.  Rule 8006, Bankruptcy

Rules, provides in pertinent part:

> Within 10 days after filing the notice of
> appeal as provided by Rule 8001(a), the
> appellant shall file with the clerk and serve
> on the appellee a designation of items to be
> included in the record on appeal and a

statement of the issues to be presented.
Within 10 days after the service of the
appellant's statement the appellee may file
and serve on the appellant a designation of
additional items to be included in the record
on appeal ....

Rule 8009(b), Bankruptcy Rules, provides that "[a]n appellee may

also serve and file an appendix which contains material required

to be included by the appellant but omitted by the appellant."

It is Snider/Wentland's burden as appellees to assure that the

record is sufficiently complete to defend the bankruptcy court's

ruling.  *In re Cogliano*, 355 B.R. 792, 803 (9th Cir.BAP 2006),

citing *In re Kyle*, 317 B.R. 390, 394 (9th Cir.BAP 2004), *aff'd*,

170 Fed.Appx. 457 (9th Cir.2006).  Because Snider/Wentland had

the opportunity to include the Request for Judicial Notice in the

Excerpt of Record on Appeal, Snider/Wentland cannot argue that

representations made by Hauser preclude Hauser from now

contending that he was acting on behalf of the trustee after the

1993 Stipulation was executed.

Furthermore, even if Hauser's alleged representations to the

San Joaquin Superior Court were part of the record on appeal,

Snider/Wentland's contention that Hauser is judicially estopped

from arguing a contrary position on the issues of preemption and

exclusivity of the Bankruptcy Court to redress the allegations in

the Malicious Prosecution Action is without merit.  The debtor

cannot deal with or characterize the nature of an asset of a

bankruptcy estate, except in accordance with bankruptcy law.

As explained in *Wagner v. Professional Eng'rs in Cal. Gov't*,

62

354 F.3d 1036, 1044 (9ᵗʰ Cir.2004):

> 'Judicial estoppel, sometimes known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.' ... Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts.' ... Judicial estoppel applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion.

The Ninth Circuit restricts the application of judicial estoppel "to cases where the court relied on, or "accepted," the party's previous inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9ᵗʰ Cir.2001).

However, Hauser did not benefit from the alleged representations to the San Joaquin Superior Court because that Court granted nonsuit for Snider/Wentland based on the Shermans' failure to schedule the causes of action in the Chapter 7 bankruptcy. Therefore, the San Joaquin Superior Court did not rely on or accept Hauser's representations that he was acting on behalf of the trustee or that the claims were not an asset of the bankruptcy estate. The Superior Court's judgment was implicitly premised on the bankruptcy law that a bankruptcy estate asset must be scheduled and the failure to do so foreclosed the claims.

Snider/Wentland also argues, that Hauser was not acting on behalf of the trustee in continuing to litigate the Superior Court Action after the 1993 Stipulation, is evidenced by the scheduling in the Shermans' second bankruptcy petition, Case No.

1   01-26747-C-7, in the United States Bankruptcy Court for the

2   Eastern District of California, of a debt to Hauser that is

3   asserted to be "business related in that it is for legal fees

4   incurred in litigation with Bank of Lodi".

5       The Bankruptcy Court erred in ruling that preemption does

6   not apply to the Malicious Prosecution Action and that the

7   Malicious Prosecution Action is not within the exclusive

8   jurisdiction of the Bankruptcy Court.  There is no question that

9   the Superior Court Action was commenced by the Shermans and the

10   trustee to litigate claims which were retained property of the

11   bankruptcy estate, which had never been scheduled property of the

12   estate.  As a matter of bankruptcy law, the Superior Court Action

13   against Snider/Wentland was and remained an asset of the

14   Shermans' bankruptcy estate because of the trustee's failure to

15   abandon that property as required by bankruptcy law.

16   Snider/Wentland's reliance on *Sattan* and on judicial estoppel of

17   Hauser do not change this conclusion.

18       **F.**   **Concurrent Jurisdiction**.

19       Assuming *arguendo* that the Bankruptcy Court did not err in

20   concluding that preemption did not give rise to exclusive

21   jurisdiction in the Bankruptcy Court of the Malicious Prosecution

22   Action, Hauser argues that the Bankruptcy Court erred in

23   concluding that it lacked concurrent jurisdiction.

24       "Federal district courts have exclusive jurisdiction over

25   all cases under Title 11 of the United States Code, and

26   concurrent jurisdiction over all civil proceedings arising under

Title 11, or arising in or related to cases under Title 11." *In re Harris Pine Mills*, 44 F.3d 1431, 1434 (9th Cir.), *cert. denied*, 515 U.S. 1131 (1995); 28 U.S.C. § 1334(a). "Those matters falling under the heading of concurrent jurisdiction (i.e., civil actions involving claims that arise under or in or are related to Title 11 proceedings) may be originally filed in state court, then subsequently removed by one of the parties to federal district court. 28 U.S.C. § 1452(a)." *In re Harris Pine Mills, id.* at 1435.

### 1. **Core Proceeding - Interpretation of Bankruptcy Court Order**.

As explained in *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir.2000), Congress created the "core" and "non-core" distinction in the Bankruptcy Amendments and Federal Judgeship Act of 1984 in response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982):

> Under the 1984 Act, bankruptcy judges may hear and decide core proceedings. *See* 28 U.S.C. § 157(b)(1). However, bankruptcy judges may only propose findings of fact and conclusions of law to federal district courts as to non-core proceedings related to a case under title 11. *See* 28 U.S.C. § 157(c)(1). Thus, the separation of 'core' and 'non-core' proceedings in the 1984 Act creates a distinction between those judicial acts deriving from the plenary Article I bankruptcy power and those subject to general Article III federal court jurisdiction.

"[C]laims that arise under or in Title 11 are deemed to be 'core' proceedings, while claims that are related to Title 11 are 'noncore' proceedings." *Id.* at 1435. "'Non-core proceedings'

65

are those not integral to the restructuring of debtor-creditor

relations and not involving a cause of action under title 11."

*In re Gruntz, id.* at 1081.  "Core proceedings are 'matters

concerning the administration of the estate' and rights created

by title 11."  *In re Intl Nutronics, Inc.*, 28 F.3d 965, 969 (9th

Cir.), *cert. denied*, 513 U.S. 1016 (1994).  Core proceedings

include, but are not limited to, those listed in 28 U.S.C. §

157(b)(2).  Thus, core proceedings include "matters concerning

the administration of the estate", 28 U.S.C. § 157(b)(2)(A), and

"other proceedings affecting the liquidation of the assets of the

estate ...", 28 U.S.C. § 157(b)(2)(O).  "[R]esolution turn[ing]

on the interpretation of a prior court order, which in turn

interpreted and applied a specific provision of Title 11 ... is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O)

...."  *In re Cooley*, 88 B.R. 788, 789 (Bkrtcy.S.D.Tex.1988).

*See also In re Gray Line of Boston, Inc.*, 62 B.R. 811, 813

(Bkrtcy.D.Mass.1986)(core matter because action involved the

terms of a stipulation which became an Order of the Bankruptcy

Court).[7]

    As Hauser argues, the Bankruptcy Court erred in concluding

that the Malicious Prosecution Action is not a "core" proceeding

because it requires interpretation of the Bankruptcy Court's

_____

[7]Whether a particular proceeding is core represents a question
wholly separate from that of subject matter jurisdiction.  *In re
Allegheny Health Educ. & Research Foundation*, 383 F.3d 169, 175 (3rd
Cir.2004), citing *In re Marcus Hook Dev. Park, Inc.* 943 F.2d 261,
266 (3rd Cir.1991).

Order approving the 1992 stipulation which allowed dismissal of the Adversary Proceeding filed by the Shermans and the refiling of that action in the San Joaquin Superior Court.

The terms and existence of that Order and the stipulation the Order approved are critical to the resolution of the Malicious Prosecution Action, in part because one who acts pursuant to the Stipulation and Order does not violate the law and one who consents to conduct cannot later claim to be aggrieved by it.  California Civil Code § 3515.  In order to address and resolve the probable cause and malice elements of the Malicious Prosecution Action, the Order of the Bankruptcy Court approving the 1992 stipulation must be interpreted:

> The order approving the stipulation dealt specifically with how and where to adjudicate claims first advanced in the adversary action.  It contemplated and approved transfer of the dispute to state court, joinder of the trustee as a party plaintiff, and retention of Hauser to bring the estate's claims in that action.  It required Hauser to maintain, litigate entitlement to, and thereafter properly disburse potential estate assets which resulted from the sale of real property in the bankruptcy.

Hauser refers to cases holding that "[b]ankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334." *In re Chateaugay Corporation*, 201 B.R. 48, 62 (Bkrtcy.S.D.N.Y. 1996), *aff'd*, 213 B.R. 633 (S.D.N.Y.1997); *see also In re White Motor Credit Corp.*, 75 B.R. 944, 947-948 (Bkrtcy.N.D.Ohio 1987).

1       Although Hauser is unable to cite any decision

2  characterizing an action against a debtor or trustee's attorney

3  for maliciously pursuing an action that the Bankruptcy Court

4  approved, as a "core proceeding", Hauser refers to *In re*

5  *Interlogic Trace, Inc.*, 200 F.3d 382 (5th Cir.2000), which held

6  that an action by the bankruptcy trustee against the debtor's

7  accountants for alleged malpractice in providing bankruptcy

8  related services was barred by res judicata because of the

9  bankruptcy court's prior order approving the accountants' fee

10 application.  Hauser also refers to *Matter of Southmark Corp.*,

11 163 F.3d 925 (5th Cir.), *cert. denied*, 527 U.S. 1004 (1999).  In

12 *Southmark Corp.*, a Chapter 11 debtor filed a malpractice suit in

13 state court against the accountant to the court-ordered examiner

14 in the debtor's reorganization case.  The malpractice action

15 alleged breaches of fiduciary duty and of the contract whose

16 terms were approved by the Bankruptcy Court and prayed for the

17 return of the accountant's fee, which fee was approved by the

18 Bankruptcy Court.  After the accountant removed the case to the

19 Bankruptcy Court, the debtor moved to remand.  The Bankruptcy

20 Court denied remand and the Fifth Circuit affirmed, holding that

21 the malpractice action at issue was a "core proceeding" because

22 it "involves the nature of the services performed for the

23 debtor's estate and the fees awarded under the superintendence of

24 the bankruptcy court" and it sought "to recover an asset of

25 Southmark's estate that Coopers let slip away."  163 F.3d at 931.

26      These cases require the conclusion that the Bankruptcy

1  Court's 1995 Order approving the 1992 Stipulation Re: Dismissal

2  of Adversary Proceeding must be evaluated to determine whether it

3  negates Snider/Wentland's malicious prosecution claim.  The

4  Bankruptcy Court, noting the delay in submitting the 1992

5  Stipulation to the Bankruptcy Court, concluded:

> It is axiomatic that the Hauser Defendants
> could not have been compelled by the court to
> file a lawsuit in state court in 1992, when
> the court did not enter the order at issue
> until three years later in 1995.  Second,
> even if the court had entered the January
> 1995 Order before the Hauser Defendants filed
> the March 1992 State Court Action, that order
> cannot reasonably be interpreted as
> compelling the Hauser Defendants to file the
> March 1992 State Court Action.  Their
> contention to the contrary is a
> misinterpretation of the plain language and
> meaning of the January 1995 Order.  The order
> was an example of a common occurrence.  It
> approved a stipulation for dismissal in one
> forum without prejudice to the re-filing in
> another forum.  It did not compel the re-
> filing.

16      This analysis is flawed because whether the 1992 Stipulation

17  Re: Dismissal of Adversary Proceeding compelled or simply

18  authorized the Superior Court Action, its existence and terms are

19  central to the resolution of key issues in the Malicious

20  Prosecution Action.  In addition, Hauser argues that there is no

21  support in the record that the 1992 Stipulation was not acted

22  upon until 1995.  In the partial transcript of proceedings in the

23  San Joaquin County Superior Court on January 29, 1997, attached

24  to Snider/Wentland's Request for Judicial Notice in Reply to

25  Defendant's Motion to Dismiss, ER 33, Mr. Hauser states in

26  pertinent part:

> We proceeded before the bankruptcy court upon notice to creditors. And with the consent of Michael McGranahan - who was the court-appointed bankruptcy trustee - the Court approved, pursuant to stipulation, dismissal of the federal case so that it can be refiled in state court.
>
> It also approved Mr. McGranahan joining in as a party co-plaintiff.
>
> ...
>
> This complaint, pursuant to stipulation, and pursuant to a lot of other motions heard by the bankruptcy court, was dismissed so that we could proceed to pursue the action in state court. [ER 33, pp.824-825]

As Hauser contends, the 1992 Stipulation "indicates that the agreement in question was reached at a status conference, which obviously was attended by the court itself." The 1992 Stipulation states in pertinent part:

> 8. It is further understood that the Trustee, through his counsel, has at the Status Conference which occurred on November 6, 1991, expressed a belief that the Trustee should join as a party Plaintiff to the contemplated San Joaquin Superior Court action and any benefits and burdens imposed upon the Plaintiffs/Debtors as a result of this Stipulation shall similarly extend to the Trustee.

Oral stipulations in open court are effective even if no written stipulation is filed. *See Eitel v. McCool*, 782 F.2d 1470, 1473 (9th Cir.1986), agreeing with other circuits that "an unqualified oral stipulation of dismissal made in open court satisfies Rule 41(a)(1)(ii), even where no formal stipulation was signed by the parties"; *see also Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir.1995): "The purpose of filing a stipulation of dismissal with

1  prejudice is to facilitate the management of the judicial docket

2  ... Since both [the] Magistrate Judge and [the district court

3  judge] along with the parties were aware the Coldwell-Golden suit

4  was dismissed with prejudice without there being a formal filing,

5  the failure to file in these circumstances is irrelevant";

6  *compare Camacho v. Mancuso*, 53 F.3d 48, 52 (4th Cir.1995)(where

7  neither the presiding district court judge nor the clerk of the

8  court had any indication that the parties had agreed by telephone

9  to dismiss the action, Rule 41(a)(1)(ii) requires tangible

10 confirmation of the parties' agreement to dismiss).

11      Finally, the Bankruptcy Court ignored the fact that the 1995

12 entry of the Order approving the 1992 Stipulation Re: Dismissal

13 of Adversary Proceeding preceded resolution of the Superior Court

14 Action by more than two years, during which time it cannot be

15 concluded that the Shermans were pursuing the Superior Court

16 Action without Bankruptcy Court approval.  Noteworthy is the

17 transcript reference in the Bankruptcy Court status conference

18 that the trustee's participation in the state court case would be

19 for the estate.

20      **2.   Core Proceeding - Wrongdoing of Bankruptcy**

21 **Trustee's Attorney**.

22      Hauser argues that the Bankruptcy Court erred in concluding

23 that the Malicious Prosecution Action is not a core proceeding

24 because claims against a trustee or a trustee's attorney for

25 alleged misconduct in handling estate actions are core

26 proceedings.

1    In so arguing, Hauser cites *In re Harris Pine Mills, supra*,

2    44 F.3d 1431, and *In re Ferrante*, 51 F.3d 1473 (9th Cir.1995).

3    In *Harris Pine*, purchasers of a division of a Chapter 11 debtor

4    brought an action in state court against the Chapter 11 trustee

5    and its agents, alleging fraud, negligence, and negligent

6    misrepresentation, after the division proved less profitable than

7    the purchasers had expected.  In pertinent part the Ninth Circuit

8    held that the district court did not err in denying the motion to

9    remand because federal jurisdiction existed over the case as a

10   core proceeding in bankruptcy.  In so holding, the Ninth Circuit

11   followed "the clear majority of decisions from other courts ...

12   that postpetition state law claims asserted by or against a

13   trustee in bankruptcy or the trustee's agents for conduct arising

14   out of the sale of property belonging to the bankruptcy estate

15   qualify as core proceedings."  *Id*. at 1437.

16   In *In re Ferrante*, a successor Chapter 11 trustee brought an

17   adversary proceeding to recover on a surety bond based on the

18   predecessor trustee's alleged embezzlement and breach of

19   fiduciary duties.  The insurance company argued on appeal that

20   the Bankruptcy Court did not have jurisdiction.  The Ninth

21   Circuit ruled:

22           The bankruptcy court did have jurisdiction
             because this case involves a core proceeding.
23           Core matters '"concern[] the administration
             of the estate."' ... Because this case evokes
24           the Bankruptcy Act's imposition of duties on
             trustees to administer estate property and a
25           surety's liability on its bond for the
             benefit of the estate, it cannot be gainsaid
26           that it involves a core issue ... It is also

> particularly germane to the bankruptcy
> proceeding context, for it involves the very
> bankruptcy process itself.  Nothing could be
> more important to the handling of a
> bankruptcy estate than the fidelity of those
> who are entrusted with its assets.

51 F.3d at 1476.

Hauser argues that, in filing the Adversary Proceeding in the Shermans' bankruptcy action, he was administering an estate asset, regardless of whether or not the Shermans' scheduled their claims against Snider/Wentland, because the claims became, as a matter of law, the property of the bankruptcy estate when the petition was filed.  *See discussion supra*.  In addition, the Superior Court Action was filed pursuant to the 1992 Stipulation allowing McGranahan as the trustee for the bankruptcy estate to join as a party plaintiff.  Pre-petition state law claims asserted by a trustee in bankruptcy qualify as core proceedings as does the post-petition pursuit of the claims against Snider/Wentland by McGranahan as trustee.

The Malicious Prosecution Complaint, read in conjunction with judicially noticed documents, challenges Hauser's conduct in his capacity as counsel for the debtors, Shermans, and as counsel for the bankruptcy trustee in pursuing the Snider/Wentland claims.  These facts establish core jurisdiction based on the authority cited above.

**3.   Core Proceeding - Malicious Prosecution Action Exists Only By Virtue of Bankruptcy Proceeding**.

Hauser argues that the Bankruptcy Court's conclusion that

1  the Malicious Prosecution Action is not a core proceeding is

2  error because it is a proceeding that, by its nature, could arise

3  only in the context of a bankruptcy case under bankruptcy law.

4  *Southmark Corp., supra*, 163 F.3d at 930, quoting *In re Woods,* 825

5  F.2d 90, 97 (5th Cir.1987).

6       As Hauser argues, the Bankruptcy Court's ruling that "[t]he

7  Malicious Prosecution Action is based on a state law claim, and

8  can exist outside the bankruptcy context, as shown by the fact

9  that it was first filed in state court" is an untenable

10 conclusion:

11            All that was required for Snider/Wentland to
              file this malicious prosecution action in
12            state court was payment of a filing fee.  The
              fact appellees paid the price of admission
13            hardly establishes state court jurisdiction;
              if it did, no party could ever launch an
14            attack on the jurisdiction of the original
              forum.
15
16      Further, as Hauser argues, the conclusion that the Malicious

   Prosecution Action exists outside the bankruptcy context is
17
   belied by the record:
18
              The action arises out of an adversary
19            proceeding initiated in bankruptcy court and
              moved to state court pursuant to the parties'
20            stipulation and the bankruptcy court's
              approval.  The only wrongdoing alleged is
21            pursuit of assets omitted from the debtors'
              schedules without taking action to amend
22            those schedules.  The so-called favorable
              termination is, according to appellees, a
23            judgment of nonsuit based on the conclusion
              that the Shermans' pursuit of the San Joaquin
24            action was inconsistent with the information
              provided in their bankruptcy schedules.
25            Every aspect of this action exists **solely**
              because of what was done or not done in a
26            bankruptcy proceeding.

                                  74

1      **4.   Core Proceeding - Disposition Determined by Title**

2  **11**.

3      Hauser argues that the Bankruptcy Court erred in concluding

4  that the Malicious Prosecution Action will not be determined by a

5  provision of Title 11.

6      In so arguing, Hauser relies on the concurring opinion in *In*

7  *re Lopez*, *supra*, 283 B.R. 22.   In *In re Lopez*, a former Chapter 7

8  debtor moved to reopen the bankruptcy case in order to schedule

9  an omitted cause of action, and to cut off an estoppel argument

10 which the state court defendant sought to raise.   The Bankruptcy

11 Court denied the motion based on the debtor's alleged lack of

12 good faith in omitting the asset in the first place.   The BAP

13 held that, even assuming the debtor had intentionally concealed

14 the cause of action by omitting it from her bankruptcy schedules

15 and statements, this was not a sufficient reason for denying the

16 motion to reopen in order to administer the asset that could

17 benefit creditors.   In his concurring opinion, Judge Klein wrote

18 separately "to emphasize salient practice points about the

19 problem of unscheduled causes of action that is increasingly a

20 headache for nonbankruptcy courts and litigants so that they may

21 have more sophisticated insights about how to deal with the

22 problem."   *Id.* at 31.   Judge Klein noted that "[i]t has become

23 increasingly popular to interpose judicial estoppel as a defense

24 to a lawsuit by a former debtor who did not schedule the cause of

25 action in the bankruptcy case", and went on to state that "the

26 judicial estoppel defense to the basic unscheduled cause of

75

action is meretricious and potentially inexpedient for two

reasons":

> First, the *unscheduled cause of action is still the property of the bankruptcy estate* after a chapter 7 bankruptcy case is closed, not the property of the debtor, regardless of whether the case is reopened and regardless of whether schedules are amended after reopening.

> Upon closing a case, correctly scheduled property not otherwise administered by the trustee is abandoned to the debtor.  11 U.S.C. § 554(c).

> *Property that was not correctly scheduled remains property of the estate forever (until administered or formally abandoned by the trustee), regardless of whether it is scheduled after the case is reopened.*  11 U.S.C. § 554(d); *cf.* Helbling & Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion over Reopening Cases and Amending Schedules to Add Omitted Debts*, 69 AM.Bankr.L.J. 33, 37-47 (1995).

> Thus, in the case of an omitted cause of action, the trustee is the real party in interest and the more correct defenses are that the action is not being prosecuted by the real party in interest and that the debtor lacks standing.  *Haley v. Dow Lewis Motors, Inc.*, 72 Cal.App.4th 497, 511 ... (1999).

> The purpose of reopening the bankruptcy case in this context is to permit the appointment of a trustee to deal with the property of the estate.  At the time of reopening, the court must determine whether a trustee should be appointed because the original trustee is ordinarily relieved at the time the case is closed.  Fed.R.Bankr.P. 5010.  If the purpose of the reopening is to deal with unscheduled assets as property of the estate, then it is per se an abuse of discretion not to order the appointment of a trustee.

The second difficulty with the judicial estoppel defense is that the automatic stay remains in effect to protect the property of the estate so long as it is property of the estate, even after the bankruptcy case is closed.  11 U.S.C. § 362(c)(1).  Thus, dismissing the action probably violates the automatic stay.  The practical consequence is futility because acts in violation of the automatic stay are void ab initio.  *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 574-75 (9th Cir.1992).

If one is determined to impose judicial estoppel, the better course is to use it as a device to require that the action be prosecuted by the real party in interest - a bankruptcy trustee.

Reopening does not bring property back into the estate nor does it cause the automatic stay to be revived.  *The unscheduled asset never lost its character as property of the estate and the automatic stay, which otherwise terminated on closing the case, never ceased to remain applicable to protect (and render void any act against) the property of the estate.*  It is for this reason that it is often difficult to perceive nonobfuscatory merit in a defendant's opposition to reopening; it ought to be in the interest of defendant to be in a position to have a definitive resolution of the matter.

The expedient solution to this dilemma is to require the parties to return to bankruptcy court for reopening so that a trustee can be appointed to deal with the cause of action that is property of the estate.  The trustee has authority to act for the benefit of the estate and may sell the cause of action, prosecute it in nonbankruptcy court, settle it, or abandon it to the debtor as of inconsequential value to estate.

The worst thing the parties can do is to ignore the property of the estate problem. The worst thing a bankruptcy court can do is to frustrate the process by refusing to reopen and order the appointment of a trustee

77

        who can definitively deal with property of
        the estate. [Emphasis added]

*Id.* at 32-33.  Judge Klein notes that if the trustee abandons

the cause of action to the debtor, "the debtor thenceforth owns

the cause of action and must be prepared to deal with all

defenses, including estoppel."  *Id.* at 33 n.16.

    Relying on Judge Klein's concurring opinion, as Hauser

argues, there are only two reasonable constructions of the

Superior Court Action after McGranahan "withdrew":

        Either Hauser and the Shermans were
        administering an asset on behalf of the
        bankruptcy estate with authority to do so, or
        they were proceeding without authority to
        act.  In the latter event, pursuit of the
        action from 1993 forward was an exercise in
        futility for all the parties because acts
        taken in violation of the automatic stay
        (including the judgment of nonsuit) were void
        ab initio.  If so, this malicious prosecution
        action will indeed be determined by a
        provision of Title 11, because it is
        predicated on an alleged 'favorable
        termination' which in fact is a void judgment
        in violation of the automatic stay.

    **G.   Divestiture of Subject Matter Jurisdiction**.

    Hauser argues that the Bankruptcy Court erred in ruling that

subject matter jurisdiction pursuant to Section 1334(b) does not

exist based on the representation by Snider/Wentland to the

Bankruptcy Court that they will not attempt to amend the

Malicious Prosecution Complaint to proceed against McGranahan or

anyone acting on his behalf with proper authority to do so.  With

this representation, Hauser contends, the Bankruptcy Court

considered itself divested of subject matter jurisdiction and

                              78

free to characterize the Malicious Prosecution Act as divorced from the Shermans' bankruptcy proceedings.  Hauser cites cases holding that the presence or absence of subject matter jurisdiction must be determined on the state of affairs when the Bankruptcy Court's jurisdiction is invoked.  *See In re Cannon*, 196 F.3d 579, 586 n.29 (5th Cir.1999); *In re Toledo*, 170 F.3d 1340, 1346 n.8 (11th Cir.1999).

Although most of the cases invoking this principle involve diversity jurisdiction, the rule has been applied to federal question cases.  *See Rosa v. Resolution Trust Corp.* 938 F.2d 383, 392 n.12 (3rd Cir.), *cert. denied*, 502 U.S. 981 (1991); *F. Alderete General Contractors, Inc. v. United States*, 715 F.2d 1476, 1480 (D.C.Cir.1983); *Westmoreland Hosp. Ass'n v. Blue Cross, Etc.*, 605 F.2d 119, 123 (3rd Cir.1979), *cert. denied*, 444 U.S. 1077 (1980).[8]

The Third Circuit, noting that the principle that subject matter jurisdiction is determined at the time the suit is filed is most often recognized in diversity cases, has opined that "a district court can sometimes, after suit is filed, permit the destruction of subject matter jurisdiction."  *Kabakjian v. United States*, 267 F.3d 208, 212 (3rd Cir.2001), citing *New Rock Asset*

---

[8]In *Hose v. I.N.S.*, 180 F.3d 992, 996 (9th Cir.1999), the Ninth Circuit, citing *F. Alderete General Contractors*, stated: "Ordinarily, under [28 U.S.C. §] 1631, jurisdiction is determined as of the filing of the initial complaint and, after vesting, cannot be ousted by subsequent events", but further holding that "when subsequent events render the case non-justiciable so that no federal court would have jurisdiction, then transfer is inappropriate."

1 *Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d

2 1492, 1503 (3ʳᵈ Cir.1996). In *New Rock Asset Partners*, the Third

3 Circuit stated in dicta,

> Even in the federal question context,
> however, the focus of the time of filing rule
> has been on preventing manipulation of
> jurisdiction when a claim is removed. As we
> observed in *Westmoreland Hospital Ass'n v.*
> *Blue Cross of Western Pa.,* 'a subsequent
> amendment to the complaint after removal
> *designed to eliminate the federal claim* will
> not defeat federal jurisdiction.' ... Along
> with the obvious goal of judicial efficiency,
> we perceive the risk of strategic behavior as
> the primary rationale behind the time of
> filing rule.

11 101 F.3d at 1503-1504.

12 No case has been found to indicate that the Ninth Circuit

13 will follow the Third Circuit's rule.

14 In any event, the record on appeal demonstrates that

15 Snider/Wentland, when confronted with the allegation in the

16 Malicious Prosecution Complaint that Hauser, on behalf of the

17 Shermans, brought and/or maintained the Superior Court Action

18 without probable cause because of the failure to include the

19 causes of action alleged in the Superior Court Case on their

20 bankruptcy schedules, represented to the Bankruptcy Court that

21 Snider/Wentland would not amend to name McGranahan as a party.

22 The only inference to be drawn from this representation is an

23 attempt to purposefully avoid and negate the subject matter

24 jurisdiction of the Bankruptcy Court in order to obtain remand

25 by, in effect, deleting the averment that the Malicious

26 Prosecution Action was brought (as opposed to maintained) without

80

1  probable cause.[9]

2  **H.   Factual Findings Not Supported by the Record**.

3  Hauser argues that the Bankruptcy Court's findings are not

4  supported by the record.

5  Hauser contends that the finding that "the 1992 Stipulation

6  was not filed with or acted upon by the bankruptcy court until

7  January 30, 1995" has "absolutely no support" in the record.

8  Hauser asserts that the January 30, 1995 date is the date the

9  1992 Stipulation was filed and ordered approved by the Bankruptcy

10 Court.  The record, however, reflects that the agreement to

11 dismiss the Adversary Proceeding, refile it in the San Joaquin

12 Superior Court, join McGranahan as a plaintiff, and authorize

13 Hauser to present the Shermans and McGranahan in the Superior

14 Court Action was approved years before the 1992 Stipulation was

15 filed and ordered approved by the Bankruptcy Court.

16 The contention that the above-quoted finding is not

17 supported by the record is without merit.  It is a fact that the

18 1992 Stipulation was not filed with the Bankruptcy Court and

19 approved by Order until January 30, 1995.  There is no

20 explanation for the delay in the record.  While the inferences to

21 be drawn from the fact of the 1992 Stipulation may be different,

22 the actual finding at issue is conclusively supported by the

23

24       [9]Counsel for Snider/Wentland, in the hearing on Hauser's
   Emergency Motion for Stay Pending Appeal, denied making any
25 representation that the Malicious Prosecution Complaint would not
   be amended to allege a claim against Hauser for his representation
26 of McGranahan in the Superior Court Action.  ER 31, p. 792

1  record.

2      Hauser further argues that the Malicious Prosecution

3  Complaint's allegations do not support that the Complaint is

4  "based on the alleged Malicious Prosecution of the March 1992

5  State Court Action".  Hauser contends that a finding that the

6  malicious prosecution case is based "solely" on the Complaint

7  filed in the San Joaquin Superior Court on March 11, 1992 is

8  contrary to the allegations in paragraph 16 of the state

9  Malicious Prosecution Complaint that Hauser acted maliciously "by

10  failing to advise the SHERMANS to report their alleged claims

11  against plaintiffs in their bankruptcy schedules and by

12  consciously choosing to let the bankruptcy proceed to discharge

13  and then, within a matter of weeks, file the original Complaint

14  against plaintiffs herein."   Hauser argues that the "original

15  Complaint" alleged in paragraph 16 can only refer to the

16  Adversary Proceeding because the Superior Court Action was

17  commenced approximately one year after the Shermans' discharge.

18      Hauser argues that there is no support in the record for the

19  Bankruptcy Court's conclusion that the Shermans "were not

20  'administering' an asset of the bankruptcy estate [but] were mere

21  interlopers who had no standing to prosecute the claims."  Hauser

22  contends that the stipulation in the Adversary Proceeding and

23  order of the Bankruptcy Court authorized the Shermans' pursuit in

24  the San Joaquin County Superior Court of the claims first

25  advanced in the Adversary Proceeding and also reflects exercise

26  of the trustee's discretion to allow the Shermans to pursue the

1   Superior Court Action as co-plaintiffs with the trustee for the

2   bankruptcy estate.

3       The 1993 Stipulation Regarding Dismissal of Plaintiff

4   Michael D. McGranahan as Party Plaintiff "reflects an exercise of

5   the trustee's discretion to allow the Shermans to continue with

6   the litigation notwithstanding his withdrawal" and that

7   Snider/Wentland's counsel conceded that the trustee granted such

8   authority. *See discussion supra.*  Hauser argues:

9           The most that can be said of this record when
            the [Bankruptcy Court] issued its memorandum
10          decision is that it was unclear whether, or
            to what extent, there was an agreement
11          between the trustee and the Shermans
            concerning pursuit of the underlying action.
12          This is not surprising since the matter
            before the court until the filing of
13          appellees' eleventh-hour remand motion was a
            Rule 12(b)(6) motion to dismiss, not a motion
14          for summary judgment supported by
            declarations, deposition testimony, discovery
15          responses and the like.  In any event,
            nothing in the record supports the conclusion
16          that the Shermans were 'interlopers' at all,
            much less as a matter of law.

17

18      Hauser's arguments rely on the inferences that may be drawn

19   from the fact that McGranahan executed the 1993 Stipulation but

20   did not file it with the Bankruptcy Court nor obtain Bankruptcy

21   Court approval to abandon the bankruptcy estate's claims.

22   Whether the legal inference drawn by the Bankruptcy Court from

23   these facts is error  is an issue separate from the factual

24   record.  Here, it cannot be disputed that McGranahan as trustee

25   attempted to withdraw as a party plaintiff in the Superior Court

26   Action but the attempt was legally ineffective, a point

83

1  recognized by the Bankruptcy Court.

2      In concluding that the claims alleged in the Malicious

3  Prosecution Action are not preempted, the Bankruptcy Court ruled:

4          The actions complained of in the Malicious
           Prosecution Action were not taken in the
5          bankruptcy court or even as part of the
           proper administration of an asset of the
6          bankruptcy estate in the 1991 Bankruptcy
           Case.  Rather, the Malicious Prosecution
7          Action seeks a remedy for the Shermans' and
           their counsels' independent actions in state
8          court.

9  Hauser contends that this conclusion is "wholly inconsistent"

10 with the record.  Hauser argues that the actions complained of in

11 the Malicious Prosecution Complaint are acts or failures to act

12 in the Bankruptcy Case and that "[t]he fact appellees accepted

13 the [Bankruptcy Court's] invitation to construe the complaint as

14 saying something other than what it says does not change the

15 allegations themselves" and that "[n]ot one word of this record

16 suggests wrongdoing by Hauser and/or the Shermans in state court'

17 independent' of the bankruptcy."

18     Hauser goes on to argue that the Bankruptcy Court's ruling

19 that the actions complained of in the Malicious Prosecution

20 Complaint were not taken by Hauser on behalf of the Shermans as

21 part of the "proper administration" of the bankruptcy estate also

22 is unsupported in the record.  Hauser argues that the record

23 demonstrates that Hauser represented McGranahan, which

24 representation was approved by the Bankruptcy Court in the 1995

25 Order approving the 1992 Stipulation and that McGranahan withdrew

26 as a plaintiff pursuant to the 1993 Stipulation.

1    Hauser asserts  that the record is silent about the

2  circumstances surrounding McGranahan's withdrawal beyond what is

3  recited in the 1993 Stipulation.  That McGranahan contemplated

4  that the Superior Court Action would continue is inferrable,

5  Hauser contends, from the provision in the 1993 Stipulation that

6  "further pleadings filed in the aforementioned state court action

7  should reflect this stipulation and withdrawal by deleting

8  Michael D. McGranahan as a party Plaintiff".  Hauser suggests

9  that a reasonable inference under the circumstances is that

10 Hauser and McGranahan communicated about the continued

11 prosecution of the Superior Court Action and the distribution of

12 any recovery.  Therefore, that Hauser continued to act at least

13 partially on behalf of the bankruptcy estate is also a reasonable

14 inference.  Hauser contends that the Bankruptcy Court "was not at

15 liberty to 'adjudicate' the issue based on speculation or

16 assumptions.  This suggestion is equally speculative.

17    However, leaving aside that the 1993 Stipulation was

18 ineffective as a matter of law, the inferences Hauser attempts to

19 draw from the 1993 Stipulation are belied by its terms.  The 1993

20 Stipulation recites that McGranahan, as trustee of the Shermans'

21 bankruptcy estate "disclaims any further interest in the above-

22 entitled state court action and intends to close out the

23 bankruptcy estate" and that McGranahan "on behalf of the

24 bankruptcy estate of the Shermans is withdrawing as a party

25 Plaintiff in the aforesaid state court action disclaiming any

26 further interest herein".  This makes clear that the trustee

purported to abandon the State Court Action, but failed to obtain legal authority from the Bankruptcy Court to do so.  Any *factual* inference that the Shermans' continued prosecution of the State Court Action after the execution of the 1993 Stipulation was to benefit the bankruptcy estate and that the trustee tacitly continued to participate in the State Court Action is totally unfounded.  However, the trustee's failure to formally abandon the State Court Action as the property of the estate by required order of the Bankruptcy Court, means that the state causes of action remained the property of the estate even after execution of the 1993 Stipulation and the closing of the Shermans' Chapter 7 bankruptcy case.[10]

Hauser argues that the Bankruptcy Court's ruling that "[t]he Malicious Prosecution Action does not challenge any action taken by McGranahan or the Hauser Defendants in any alleged capacity as counsel for McGranahan" is inconsistent with the record.  The Superior Court Action was filed by Hauser as counsel for both the Shermans and McGranahan, the trustee, and was pursued by Hauser for a year before the 1993 Stipulation by which McGranahan

---

[10]Snider/Wentland argue that if the trustee did not abandon the causes of action in 1993 pursuant to the 1993 Stipulation, the trustee would have remained potentially liable to creditors for costs, fees and sanctions.  They also argue that once a trustee discharged and the bankruptcy closed, there was no further estate to administer and any continuing proceedings in the Superior Court Action did not involve property of the estate or the administration of property of the estate. However, the case law cited above makes clear that property of the estate, that is not abandoned by the trustee in accordance with the requirements of law, remains property of the estate even after the bankruptcy is closed.  *In re Lopez, supra*, 283 B.R. at 28.

purported to withdraw and disclaim any interest on behalf of the bankruptcy estate.

**I.   Abuse of Discretion - Remand on Equitable Grounds**.

Title 28 U.S.C. § 1452(a) provides in pertinent part that "[a] party may remove any claim or cause of action in a civil action ... to the district court for the district in where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  Pursuant to Section 1452(b), "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

As quoted *supra*, the Bankruptcy Court ruled that, even if subject matter jurisdiction in the Bankruptcy Court existed over the Malicious Prosecution Action, it would exercise its discretion under 28 U.S.C. § 1452(b) to remand the Malicious Prosecution Action to the San Joaquin Superior Court:

> Even if the Malicious Prosecution Action were to have some conceivable effect on the bankruptcy estate in the 1991 Bankruptcy Case, there is an insufficient connection between the conduct of the Shermans (and the Hauser Defendants acting as the Shermans' counsel) alleged in the Malicious Prosecution Action and the 1991 Bankruptcy Case.  As stated above, the Malicious Prosecution Action does not involve actions taken by McGranahan (or the Hauser Defendants acting as McGranahan's counsel), nor does it involve actions taken by the Shermans (or the Hauser Defendants acting as the Shermans' counsel) in administering an asset of the bankruptcy estate in the 1991 Bankruptcy Case, nor does it involve claims that are preempted by the Bankruptcy Code, nor does it involve actions the Shermans were compelled to take by the

order of the bankruptcy court in the 1991
Bankruptcy Case.  It is an action seeking
damages against the Shermans (and the Hauser
Defendants acting as the Shermans' counsel)
for actions that were taken in the state
court without the standing or authority to
act on behalf of the bankruptcy estate of the
1991 Case.  The Malicious Prosecution Action
belongs in state court.

The discretion to remand pursuant to Section 1452(b) applies

only to cases arising under Title 11, or arising in or related to

cases under Title 11.  *See In re Harris Pine Mills*, *supra,* 44

F.3d at 1435; *see also In re McCarthy*, 230 B.R. 414, 418 (9th

Cir.BAP 1999).

Although the standard of review is abuse of discretion, *In

re McCarthy, id.,* 230 B.R. at 417, the factors governing the

exercise of that discretion are not fixed.  *In re Marathon Home

Loans,* 96 B.R. 296 (E.D.Cal.1989), cited in *In re McCarthy*,

explained:

The 'any equitable' ground needed for remand
subsumes both the usual considerations of
fairness, economy, and common sense and,
albeit uncomfortably, the procedural and
jurisdictional grounds for granting a motion
to remand.  The traditional grounds include:
forum non conveniens; judicial economy;
prompt, final resolution of disputes; respect
for state courts on issues of state law; and
the expertise of the court in which the
matter was pending originally.  *See* 1 L.
King, Collier on Bankruptcy ¶ 3.01[g].  The
more technical grounds include, for example,
untimely removal or lack of proper basis for
removal.  1A J. Moore & B. Ringle, Moore's
Federal Practice ¶ 0.171; Bankr.Rule 9027(a).

96 B.R. at 300.  In *In re Diversified Contract Services, Inc.*,

167 B.R. 591, 596-597 (Bkrtcy N.D.Cal.1994), the factors approved

by the Ninth Circuit in determining whether to abstain as a discretionary matter, were applied in determining whether to remand under Section 1452(b), these factors are:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than the form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, and (12) the presence in the proceeding of non-debtor parties.

In *Williams v. Shell Oil Co.*, 169 B.R. 684, 692 (S.D.Cal.1994), the factors considered in deciding to remand included:

> (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which the issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to jury trial; and (7) prejudice to the party involuntary removed from state court.

Hauser argues that the Bankruptcy Court abused its discretion because the conclusions supporting granting Snider/Wentland's motion to remand were based on an erroneous

1   view of the law.  *In re Cady, supra*, 266 B.R. at 178.

2   In addition, Hauser, relying on the twelve factors listed in

3   *In re Diversified Contract Services, Inc.*, contends that the

4   Bankruptcy Court abused its discretion by failing to analyze

5   these factors.  Hauser asserts that "the true basis for the

6   bankruptcy court's decision to remand was its misplaced

7   conclusion subject matter jurisdiction was entirely lacking" and

8   that "[t]o the extent remand was ordered on equitable grounds,

9   the [Bankruptcy Court] not only failed to consider the [twelve]

10  factors ..., it necessarily based its decision on an erroneous

11  view of the law and the facts, resulting in an abuse of

12  discretion."

13      The Bankruptcy Court abused its discretion by failing to

14  consider the twelve *Diversified Contract Services* factors.

15  Considering these factors, the first factor is: the effect or

16  lack thereof on the efficient administration of the estate if

17  abstention is recommended.  The estate was closed and had to be

18  re-opened to adjudicate any recovery.  The second factor, the

19  extent to which state law issues predominate over bankruptcy

20  issues, favors bankruptcy jurisdiction because bankruptcy law

21  issues control the essential elements and merits of the malicious

22  prosecution claim.  The third factor is the applicable law.  The

23  law is neither difficult nor unsettled, except as to analysis of

24  property of the estate.  The fourth factor, the presence of a

25  related proceeding commenced in state court, does not apply

26  because of the removal of the Malicious Prosecution Action to the

Bankruptcy Court.  With regard to the fifth factor, as concluded above, there is no jurisdictional basis other than 28 U.S.C. § 1334.  With regard to the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, the Malicious Prosecution Action is totally related to and determined by the Shermans' bankruptcy action and bankruptcy law.  The seventh factor, the substance rather than the form of an asserted "core" proceeding, is inapplicable because the Malicious Prosecution Action is, in the context of this case, a "core" proceeding for the reasons discussed above.  With regard to the eighth factor, severance of state law claims from bankruptcy matters, severance is not feasible because the real outcome depends on the bankruptcy case and law.  The ninth factor, the burden on the Bankruptcy Court's docket, is not as great since enactment of the Bankruptcy Reform Act.  With regard to the tenth and eleventh factors, the likelihood that removal of the Malicious Prosecution Action to the Bankruptcy Court involves forum shopping and the right to a jury trial, although it is arguable that Hauser is attempting by removal to avoid a jury trial; the availability of procedures to withdraw the reference of the Malicious Prosecution Action from the Bankruptcy Court to the District Court, negates these factors.  Although Hauser, a non-debtor party, is named in the Malicious Prosecution Action, Hauser was counsel for the debtors, the Shermans, in both the bankruptcy petition and in the Superior Court Action.

The failure of the Bankruptcy Court to analyze the factors

91

described in *Williams v. Shell Oil Co.*, *id.,* also constitute an abuse of discretion.  The effect of the Malicious Prosecution on the administration of the bankruptcy estate is potentially disruptive because the Shermans' bankruptcy had been closed and the creditors paid.  With regard to the second factor, bankruptcy law issues predominate over state law issues.  The difficulty of applicable state law does not weigh in favor of remand because the removed action is a straightforward malicious prosecution action, the state law is well-established.  With regard to comity, the state has less concern.  The case involves how a bankruptcy estate was administered and claims of the estate pursued first in Bankruptcy Court and then in state court where bankruptcy law as applied, determined the outcome of the case. With regard to the fifth factor, the bankruptcy case is integrally related to the Malicious Prosecution Action. Snider/Wentland is entitled to a jury trial of the Malicious Prosecution Action, which right does not exist in the Bankruptcy Court.  However, Snider/Wentland may move in the District Court for withdrawal of the reference of the Malicious Prosecution Action in order to obtain a jury trial.  There is no prejudice to Snider/Wentland because of the removal of the Malicious Prosecution Action because Snider/Wentland was a party in the bankruptcy case as well as the Superior Court Action.

## CONCLUSION

For the reasons stated above, the Order Remanding Case, Striking Motion to Dismiss and Granting Parties' Request for

1  Judicial Notice filed by the Bankruptcy Court on September 17,

2  2002 is REVERSED AND REMANDED to the Bankruptcy Court for further

3  proceedings consistent with this decision.

4  IT IS SO ORDERED.

5  **Dated:    April 18, 2007**                        **/s/ Oliver W. Wanger**
                                            UNITED STATES DISTRICT JUDGE